attributed Mr. Stephens' respiratory failure, which caused his death, secondary to pneumonia caused by coal workers' pneumoconiosis. We recognize that the evidence of record may permit an alternative conclusion, but we defer to the ALJ's authority in the finding of facts.

### III.  *CONCLUSION*

For all of the foregoing reasons, we AFFIRM the decisions and orders of the Benefits Review Board.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0260P (6th Cir.)
File Name:  02a0260p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

WOLF CREEK COLLIERIES,
                    *Petitioner,*

          *v.*                               No. 00-3404

DIRECTOR, OFFICE OF
WORKERS' COMPENSATION
PROGRAMS, DEPARTMENT OF
LABOR; EVELYN STEPHENS,
                    *Respondents.*

On Petition for Review of a Decision and Order of the
Benefits Review Board.
No.  98-1154 BLA.

Argued:  August 7, 2001

Decided and Filed:  August 2, 2002

Before:  MOORE and COLE, Circuit Judges; ROSEN,
District Judge.[*]

_____

[*] The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

### COUNSEL

**ARGUED:** Mark E. Solomons, GREENBERG & TRAURIG, Washington, D.C., for Petitioner. Barry H. Joyner, U.S. DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, Washington, D.C., J. Logan Griffith, PORTER, SCHMITT, JONES & BANKS, Paintsville, Kentucky, for Respondents. **ON BRIEF:** Mark E. Solomons, Laura Metcoff Klaus, GREENBERG & TRAURIG, Washington, D.C., for Petitioner. Patricia Nece, Helen Cox, U.S. DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, Washington, D.C., J. Logan Griffith, PORTER, SCHMITT, JONES & BANKS, Paintsville, Kentucky, for Respondents.

---

### OPINION

---

ROSEN, District Judge. Petitioner Wolf Creek Collieries appeals from (1) a decision and order of the United States Department of Labor Benefits Review Board (the "Board") affirming the Administrative Law Judge's denial of a request for modification of his award of black lung survivor's benefits to Respondent Evelyn Stephens, and (2) the Board's subsequent denial of Petitioner's motion for reconsideration. The arguments presented by Petitioner to justify further review by this court are, first, that the ALJ improperly gave "automatic preference" to the treating physician's opinion, and second, that the ALJ's opinion is erroneously based on the treating physician's diagnosis which lacks both substantial evidence and an articulated rationale, and relies on incomplete or invalid data. Because we find that Petitioner's arguments lack factual and legal merit, we AFFIRM the benefits award.

never examined Mr. Stephens and his two letters did not explain the bases of his opinions. Therefore, he accorded Dr. Kraman's opinions little weight. The ALJ also reviewed the reports of the two other experts, Drs. Renn and Castle, and noted their disagreement with the opinion of Mr. Stephens' treating physician, Dr. Hieronymus, but determined that because they never examined Mr. Stephens their opinions were entitled to less weight than the opinions of Dr. Hieronymus. The ALJ also explained that he was giving less weight to the opinions of Drs. Broudy and Wright because their only examinations of Mr. Stephens were in 1981.

It is thus clear that the ALJ did not give presumptive weight to Dr. Hieronymus's opinion. While he did accord more weight to his opinion, he examined all of the opinions and made reasoned judgments as to their credibility.

D. *SUBSTANTIAL EVIDENCE*

Wolf Creek also argues that the ALJ erred in relying on the treating physician's diagnosis because it lacks substantial evidence and an articulated rationale. Effectively, Petitioner's argument is that Dr. Hieronymus's diagnosis is not credible.

In *Peabody Coal Co. v. Groves, supra*, we held that the ALJ as factfinder should decide whether a physician's report is "sufficiently reasoned," because such a determination is "essentially a credibility matter." 277 F.3d at 836 (quoting *Director, OWCP v. Rowe*, 710 F.2d 251, 255 (6th Cir. 1983)). The ALJ as factfinder found that Dr. Hieronymus's opinion was the most credible evidence in the record regarding the cause of Mr. Stephens' death.

Wolf Creek now asks us to find otherwise, arguing that there is insufficient evidentiary support for Dr. Hieronymus' opinion. As we observed in *Groves*, such a determination would require us to address Dr. Hieronymus' credibility, which would exceed our limited scope of review over the Board's decisions. 277 F.3d at 836. Accepting the ALJ's determination of Dr. Hieronymus' credibility, the doctor

status or that the ALJ erroneously relied upon a treating physician presumption in deciding to award benefits.

We held in *Tussey* that a treating physician's opinion should be "given [its] proper deference." *Tussey*, 982 F.2d at 1042. 20 C.F.R. § 718.104(d)(5) delineates the criteria to be evaluated in determining the level of deference that would be proper:

> In appropriate cases, the relationship between the miner and his treating physician may constitute substantial evidence in support of the adjudication officer's decision to give that physician's opinion controlling weight, provided that the weight given to the opinion of a miner's treating physician shall be on the credibility of the physician's opinion in light of its reasoning and documentation, other relevant evidence and the record as a whole.

*Id.* Although this provision only applies to evidence developed after January 19, 2001, and, therefore, is not directly applicable in this case, we find it instructive.

In his decision and order denying modification, the ALJ reviewed Mr. Stephens' medical records as compiled by his treating physician and the hospital. He also reviewed the reports issued by two other doctors who each examined Mr. Stephens one time, nine years prior to his death, and the reports of a DOL medical expert and two other doctors who never examined Mr. Stephens but reviewed his medical history.

The ALJ explained his reasoning for giving greater weight to the opinion of Dr. Hieronymus than the other doctors of record: "Dr. Hieronymus examined the Miner on numerous occasions between 1981 and December 22, 1989, the date of the Miner's death. . . . As the Miner's treating physician, Dr. Hieronymus was best suited to make an assessment of the Miner's condition over a period of time." He discounted the opinion of Dr. Kraman, the DOL medical expert, because he

## I.  *FACTUAL AND PROCEDURAL BACKGROUND*

On August 23, 1993, Evelyn Stephens applied for survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*, following the December 22, 1989 death of her husband, Andrew Stephens.[1] Mr. Stephens' death certificate identified the cause of death as "respiratory failure - 2° pneumonia due to or as a consequence of coal workers' pneumoconiosis - COPD." (*See* J.A. p. 38). Mr. Stephens had worked for 33 years in the coal mines of Kentucky, the last nine years of which he worked as an electrician/ foreman for Petitioner Wolf Creek Collieries ("Wolf Creek"). The Department of Labor (the "DOL") identified Wolf Creek as the responsible coal mine operator liable for any benefits awarded.

On February 7, 1994, a district director of the Office of Workers' Compensation Programs of the DOL denied Mrs. Stephens' claim, ruling that she had not proven that her husband suffered from, or died due to, pneumoconiosis. A request for reconsideration of the claim was also denied on June 13, 1994. Mrs. Stephens then requested that the case be forwarded to the DOL Office of Administrative Law Judges for a hearing before an administrative law judge ("ALJ") to appeal the district director's decision.

*THE INITIAL HEARING BEFORE THE ALJ*

A hearing was held on Mrs. Stephens' claim before ALJ Robert L. Hillyard on June 22, 1995. After reviewing the evidence of record, ALJ Hillyard found that Mr. Stephens had pneumoconiosis which contributed to or hastened his death

---

[1] Anticipating retirement, Mr. Stephens had previously applied for black lung benefits in 1981 but later agreed to an order of dismissal when he was awarded Kentucky occupational disease benefits. The state award negated any federal black lung benefits he may have been awarded during his lifetime. *See* 30 U.S.C. § 932(g).

and, accordingly, awarded Mrs. Stephens survivor's benefits payable by Wolf Creek.

The medical evidence of record reviewed by the ALJ included x-ray evidence, hospital records, and the reports and testimony of a number of physicians. Three doctors -- Hieronymus, Broudy and Wright -- agreed that Mr. Stephens suffered a severe pulmonary impairment, but disagreed as to what caused the impairment. Two of the physicians, Drs. Broudy and Wright, who had each examined Mr. Stephens only one time eight years before his death, concluded in 1981 that his respiratory impairment resulted from an extensive smoking history. (J.A. pp. 148 and 152). Dr. Hieronymus also examined Mr. Stephens in 1981 but diagnosed coal workers' pneumoconiosis. (J.A. p. 133). Dr. Hieronymus was Mr. Stephens' primary care physician and he continued for eight years after 1981 to treat Mr. Stephens until his death in 1989.

Dr. Charles Hieronymus is board certified in family medicine and was classified as an ILO - NIOSH[2] certified reader of x-rays. Dr. Hieronymus testified that he diagnosed Mr. Stephens' pneumoconiosis based on his reading of an initial chest roentogram study, a 35-year history of coal mine work,[3] and presenting symptoms of dyspnea, orthopnea and nonproductive cough. He testified that Mr. Stephens presented with decreased breath sounds and expiratory wheezes. His nail beds showed marked clubbing and were cyanotic. Dr. Hieronymus described Mr. Stephens' chest x-ray as showing "nonspecific interstitial pulmonary disease throughout all zones," justifying an ILO classification of

---

[2]International Labor Organization - National Institute of Occupational Safety and Health.

[3]Although Drs. Hieronymus, Broudy and Wright all reported a 35-year history of coal mine employment, *see* J.A. pp. 132, 148, 152, at the hearing before ALJ Hillyard, the parties stipulated to a 33-year history. *See* J.A. p. 30.

evidence of pneumoconiosis. He noted that the medical reports of two doctors, who had only examined Griffith once, diagnosed pneumoconiosis, but felt that they "'add[ed] nothing as to the cause of the miner's death.'" 49 F.3d at 185. Finally, he remarked that Griffith's treating physician's report was equivocal regarding the etiology of the miner's pulmonary disease as well as the cause of the miner's death, and was therefore given less weight. We held that "under these circumstances, the ALJ was not required to give greater weight to the opinion of the treating physician." *Id.*

As Petitioner acknowledges, we have similarly held in numerous post-*Tussey* unpublished cases that there is no requirement that ALJs give conclusive weight to treating physicians' opinions. *See e.g., Arch of Kentucky, Inc. v. Hickman*, 188 F.3d 506, 1999 WL 646283 at **4 (6th Cir. 1999) (unpublished decision; text available on WESTLAW) (court recognized that "the diagnoses of treating physicians are not entitled to conclusive weight or even a presumption in favor of the Claimant" but noted that their opinions "deserve 'special consideration'"); *Kirk v. Elm Coal Corp.*, 187 F.3d 636, 1999 WL 618030 at **3 (6th Cir. 1999) (unpublished decision; text available on WESTLAW) ("Although the opinion of a treating physician may be accorded more weight, . . ., a treating physician's report which is neither well-reasoned nor well-documented should not be given greater weight"); *Creighton v. Bee Coal Co.*, 33 Fed. Appx. 774, 2002 WL 535785 at **5 (6th Cir. 2002) (ALJ did not err in refusing to give greater weight to treating physicians' opinions where their opinions regarding whether pneumoconiosis contributed to the miner's death were neither well-supported nor adequately reasoned).

In sum, the misconceived "treating physician presumption" does not exist, and we have never mandated that automatically controlling weight be accorded such opinion. Thus, we find no merit in Wolf Creek's claims that this Court automatically finds treating physician opinions preferred over all other medical opinions simply because of the physician's

decision in *Tussey v. Island Creek Coal Co.*, *supra*, requires that ALJs presume that the opinions of treating physicians are correct and controlling. This identical argument was made by the petitioner, and rejected by this Court, in *Peabody Coal Co. v. Groves*, 277 F.3d 829 (6th Cir. 2002). As we stated in *Peabody*,

> In *Tussey v. Island Creek Coal Co.*, 982 F.2d 1036 (6th Cir. 1993), we confirmed that the "opinions of treating physicians are entitled to greater weight than those of non-treating physicians." *Id.* at 1042. However we did not suggest that treating physicians should automatically be presumed to be correct -- we indicated that their opinions should be "properly credited and weighed." *Id.* Indeed, Peabody concedes as much: "In post-1994 unpublished decisions, however, this Court almost uniformly has recognized that notwithstanding *Tussey*, ALJs are not *required* to credit treating doctors' opinions either standing alone or where there is conflicting proof in the record." Petitioner's Br. at 29. We therefore conclude that Peabody's "treating physician presumption" argument lacks merit and disagree with its characterization of the *Tussey* decision as ambiguous or in conflict with established law.

277 F.3d at 834 (footnote omitted).

We likewise reject Petitioner's argument here.

Post-*Tussey* cases make it clear that there is no requirement that a treating physician's opinion be deemed controlling. For example, in *Griffith v. Director, OWCP*, 49 F.3d 184 (6th Cir. 1995), we found no error in the ALJ's decision to discredit a treating physician's opinion. In that case, the ALJ concluded that the record was devoid of any persuasive evidence to establish that the miner's death was due to pneumoconiosis and, therefore, denied benefits. The ALJ relied on the fact that the death certificate did not mention pneumoconiosis as a cause of death, and that the autopsy report found no

2/2t.[4] The doctor stated that Mr. Stephens was a light smoker, with only a five-year smoking history.

In addition to Dr. Hieronymus' records of his initial examination of Mr. Stephens, the ALJ was presented with hospital records from 1989 showing Mr. Stephens' ongoing treatment by Dr. Hieronymus.

During 1989, the year of his death, Mr. Andrew Stephens was hospitalized many times for acute exacerbation of chronic obstructive pulmonary disease (COPD) and respiratory failure. Dr. Hieronymus treated Mr. Stephens throughout the year. Hospital records reviewed by the ALJ showed an ongoing diagnosis from at least February 17, 1989 through December 22, 1989 of coal workers' pneumoconiosis, in addition to COPD, congestive heart failure, bronchitis and pneumonia. (*See* J.A. pp. 23-24). Mr. Stephens died at the hospital on December 22, 1989. As the ALJ noted, Dr. Hieronymus recorded the cause of death as respiratory failure secondary to pneumonia due to coal workers' pneumoconiosis and chronic obstructive pulmonary disease.

As noted, the ALJ also considered the reports of two other examining physicians, Drs. Broudy and Wright, who diagnosed respiratory conditions unrelated to coal dust exposure. Dr. Ballard Wright examined Mr. Stephens one time on March 16, 1981 and recorded a 35-year underground mining history and a 50-year pack-a-day smoking history that was reportedly reduced at that time to five to six cigarettes per day. Noting a severe aerobic impairment, Dr. Wright diagnosed Mr. Stephens as suffering from emphysema with a severe obstructive component. He concluded that Mr.

---

[4] "ILO classification" refers to the International Labor Organization's International Classification of Radiographs of the Pneumoconioses, a system for interpreting chest x-rays and classifying them for the degree of pneumoconiosis present. An ILO rating of 1/0, 1/1 or greater is evidence of pneumoconiosis. *See* 20 C.F.R. § 718.102(b).

Stephens' lung impairments were not related to his coal mine work and that he did not have symptoms of pneumoconiosis.

Dr. Bruce Broudy also examined Mr. Stephens only one time, on October 2, 1981, and recorded a coal mining employment history of 35 years and a 30-year smoking history of a pack-per-day, which reportedly by then had been reduced to half-a-pack per day. Dr. Broudy read the x-ray evidence as negative for any evidence of coal worker's pneumoconiosis. Tests, including spirometry and arterial blood gas studies, showed severe respiratory impairment and led to a diagnosis of "severe chronic obstructive pulmonary diseases secondary to chronic bronchitis and emphysema." He reported that his findings did not support a diagnosis of coal worker's pneumoconiosis; rather, he attributed the respiratory impairment to cigarette smoking.

Based upon his review of all of the evidence, the ALJ concluded that Evelyn Stephens had established that her husband's death was due to pneumoconiosis. He explained his reasoning in his March 1996 decision and order:

> The record contains medical reports by Drs. Broudy, Wright, Hieronymus and the medical records from Highland Medical Center. Dr. Broudy and Dr. Wright examined the miner in 1981. Dr. Broudy was of the opinion that the miner did not have coal workers' pneumoconiosis but did have bronchitis and emphysema resulting from his long smoking history. He said that the miner did not have the respiratory capacity to perform underground coal work. Dr. Wright diagnosed emphysema with a severe obstructive component unrelated to coal mine work.

> Dr. Hieronymus was the miner's physician from 1981 until he died in 1989 and was the attending physician at his death. Dr. Hieronymus performed a pulmonary evaluation of the miner in 1981. He saw and treated the miner several times each year. Dr. Hieronymus treated

to pneumoconiosis or to the survivors of individuals totally disabled at the time of their death or whose death was caused by pneumoconiosis. *See* 30 U.S.C. § 921. Benefits under the Black Lung Benefits Act are awarded to survivors of a miner where they prove that (1) the miner had pneumoconiosis; (2) the miner's pneumoconiosis arose out of coal mine employment; and (3) the miner's death was due to pneumoconiosis. 20 C.F.R. § 718.205(a). Claimants must prove each element by a preponderance of the evidence. *Adams v. Director, OWCP*, 886 F.2d 818, 820 (6th Cir. 1989). For claims filed after January 1, 1982, § 718.205(c) establishes three criteria by which a miner's death due to pneumoconiosis may be established: (1) where competent medical evidence establishes that pneumoconiosis was the cause of the miner's death, or (2) where pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or where the death was caused by complications of pneumoconiosis, or (3) where the presumption set forth at § 718.304 is applicable. 20 C.F.R. § 718.205(c). Pneumoconiosis is a "substantially contributing cause" of a miner's death if it hastens the miner's death. 20 C.F.R. § 718.205(c)(5). *See also*, *Brown v. Rock Creek Mining*, 996 F.2d 812, 815 (6th Cir. 1993). The four methods to establish the existence of coal workers' pneumoconiosis listed in the regulations include: (1) by x-ray evidence; (2) by biopsy or autopsy; (3) by application of the regulatory presumption; and (4) by reasoned medical evidence and opinion. *See* 20 C.F.R. § 718.202.

C.  *THERE IS NO TREATING PHYSICIAN PRESUMPTION AND NO VIOLATION OF THE APA.*

Wolf Creek argues that the ALJ "found both the existence of pneumoconiosis and death due to it by presuming that the opinion of a doctor who treated the miner was automatically more credible than any other doctor's opinion simply by virtue of that treatment," and that this "treating doctor presumption violates the Administrative Procedure Act." Petitioner's Brief, p. 18. Petitioner is of the belief that our

are supported by substantial evidence and are in accordance with the applicable law. *Id.*

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Peabody, supra*; *Cross Mountain Coal, Inc. v. Ward,* 93 F.3d 211, 216 (6th Cir.1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). In deciding whether the substantial evidence requirement is satisfied, we consider whether the administrative law judge adequately explained the reasons for crediting certain testimony and evidence over other evidence in the record in deciding either to award or deny benefits. *Peabody Coal Co. v. Hill,* 123 F.3d 412, 415-6 (6th Cir. 1997) (quoting *Director, OWCP v. Congleton*, 743 F.2d 428, 430 (6th Cir. 1984)). "We do not reweigh the evidence or substitute our judgment for that of the ALJ." *Peabody*, 277 F.3d at 833 (quoting *Tennessee Consol.*, 264 F.3d at 606.) Thus, we will not reverse the conclusions of an ALJ that are supported by substantial evidence, "even if the facts permit an alternative conclusion." *Id*. (quoting *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir.1995)). Finally, when dealing with a claim for benefits, "we keep in mind that the Black Lung Benefits Act is remedial in nature and must be liberally construed 'to include the largest number of miners as benefit recipients.'" *Peabody Coal Co. v. Hill, supra*, 123 F.3d at 414 (quoting *Tussey v. Island Creek Coal Co.*, 982 F.2d 1036, 1042 (6th Cir. 1993)). *See also*, 1972 U.S.Code Cong. & Admin.News 2315, Pub.L. No. 92- 303 ("In the absence of definitive medical conclusions there is a clear need to resolve doubts in favor of the disabled miner or his survivor.")

B. *CLAIM REQUIREMENTS UNDER THE BLACK LUNG BENEFITS ACT*

As defined in the Black Lung Benefits Act, 30 U.S.C. §§ 901-945, benefits may be awarded to miners who are totally disabled according to Federal statutory standards due

the miner during his numerous hospitalizations in 1989. Dr. Hieronymus diagnosed coal workers' pneumoconiosis and stated that death was due to pneumoconiosis or complications thereof, and opined that the respiratory failure and all other problems were probably related to coal workers' pneumoconiosis.

The hospital records are numerous and leave no doubt that the miner had a severe pulmonary impairment. Dr. Broudy and Dr. Wright agreed that the miner had a severe pulmonary impairment although they do not agree on the cause.

The most recent medical evidence is from Dr. Hieronymus and the hospital records. Dr. Hieronymus saw and treated the miner many times a year from 1981 to 1989. I find troubling the fact that Dr. Hieronymus noted the miner as a light smoker with a smoking history of approximately five years. The evidence establishes a smoking history of about 50 years.[5] However, this is not sufficient to discredit Dr. Hieronymus' opinions. Because Dr. Hieronymus treated the miner for over nine years up until his death and there are no contrary medical reports more recent than 1981, I give the most weight to the opinion of Dr. Hieronymus. Based on his opinion, I find that the Claimant has established that the miner's death was due to and that pneumoconiosis contributed to and hastened the miner's death.

(J.A. pp. 36-37.)

Accordingly, the ALJ awarded Mrs. Stephens survivor's benefits payable by Wolf Creek.

---

[5]In addition to what Drs. Broudy and Wright noted about Mr. Stephens' history of smoking, his daughter testified that her father had begun smoking as a child and continued to do so for many years.

*WOLF CREEK'S REQUEST FOR MODIFICATION*

Wolf Creek subsequently requested a modification hearing on the award. That request was granted and on November 18, 1997, ALJ Hillyard conducted a second hearing. In this second hearing, the ALJ reviewed newly submitted medical evidence as well as his prior decision and failed to find a mistake in any determination of fact.

In the modification hearing, in addition to reviewing the evidence that the ALJ had reviewed in the initial hearing, ALJ Hillyard also reviewed new physicians' reports. This new evidence included two letters written by Dr. Steven Kraman. Dr. Kraman never examined Mr. Stephens but reviewed his medical history and records at the request of the DOL and, in a very brief three-sentence statement, without citation to any specific findings, summarily stated that he found "no evidence that Mr. Stephens suffered from, or died as a result of pneumoconiosis." (J.A. p. 132).

The ALJ also reviewed the June 1995 reports of Drs. James Castle and Joseph Renn. These two doctors reviewed Mr. Stephens' medical records and the other evidence of record from the initial hearing and disagreed with Dr. Hieronymus' opinions and diagnosis of pneumoconiosis. They believed that Mr. Stephens' respiratory condition resulted from smoking rather than coal dust exposure and that his death was not related to coal mine employment. While Dr. Castle was emphatic in his opinion that Mr. Stephens did not have pneumoconiosis, Dr. Renn offered his conclusions with "a reasonable degree of medical certainty," but he did not state his conclusions were unequivocal. (J. A. pp. 193-194).

Although the newly submitted physician reports of Drs. Castle and Renn again called attention to Dr. Hieronymus' error documenting the miner's smoking history, the ALJ again accorded nine years of treatment greater weight than the one-time examinations conducted by Drs. Broudy and Wright in 1981. The ALJ accorded even less weight to the consultative

Wolf Creek to justify further review by this Court are, first, that the ALJ's opinion reflected an "automatic preference" for the opinion of the treating physician, contrary to the Administrative Procedure Act[6] (the "APA"), and, second, that the ALJ's opinion is erroneously based on the treating physician's diagnosis which lacks both substantial evidence and an articulated rationale.[7]

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

This Court has a very narrow scope of review over the decisions of the Benefits Review Board: the decisions of the Board must be affirmed unless the Board has committed legal error or exceeded its scope of review of the ALJ's findings. *Peabody Coal Co. v. Groves*, 277 F.3d 829, 833 (6th Cir. 2002); *Tennessee Consol. Coal Co. v. Kirk*, 264 F.3d 602, 606 (6th Cir.2001). The ALJ's findings are conclusive if they

---

[6] *See* 5 U.S.C. § 557(c)(3)(A) (1977) (The Administrative Procedure Act requires that an administrative law judge's decision be accompanied by "findings and conclusions, and the reasons or basis therefor, on all material issues of fact, law or discretion presented on the record."); *see also* 20 C.F.R. § 725.477(b) (1992); *Director, OWCP v. Congleton*, 743 F.2d 428, 429 (6th Cir. 1984).

[7] The Federal Respondent, Director, Office of Workers' Compensation Programs, DOL, disagrees with Wolf Creek's position that the ALJ and the Board created an automatic preference for a treating physician's opinion. The Federal Respondent also disagrees with Wolf Creek's belief that a "physician's status as a miner's treating physician is wholly irrelevant." However, the OWCP Director believes that ALJ Hillyard failed to properly and fully evaluate the medical evidence supporting Dr. Hieronymus' opinion, and in error exclusively relied on the doctor's role as treating physician. The OWCP official thus believes remand is necessary where the ALJ erroneously accorded the treating physician opinion controlling weight without determining the reliability of his medical evaluation and conclusions.

Employer also directs the Board's attention to the Director's proposed rules as published in the Federal Register. Proposed regulation 20 C.F.R. § 718.104(d) provides that the medical opinion of the treating physician may be entitled to controlling weight and that the administrative law judge must take into consideration the following factors: the nature and duration of the relationship, the frequency and extent of treatment, and the credibility of the opinion in light of its reasoning and documentation. 62 Fed. Reg. 3339 (1997). However, as these rules are not yet in effect, neither the Board nor the administrative law judge is bound by them. Regardless, the administrative law judge did precisely as they require, in that he considered the nature, duration, extent, and frequency of the patient-physician relationship by noting that Dr. Hieronymous [sic] was the treating physician for the miner's pulmonary condition for a period of nine years and often attended claimant in a hospital setting. In addition, the administrative law judge assessed the adequacy of the reasoning and documentation underlying Dr. Hieronymus's [sic] conclusions. Therefore, the administrative law judge properly considered all of the factors contemplated by the proposed regulation. . . .

. . . Contrary to employer's contention, the Board has not created a "preference" for a treating physician that is inconsistent with *Tussey* and *Brown*. Therefore, the Board rejects employer's contention.

As employer has not demonstrated any error on the part of the administrative law judge or the Board, employer's motion for reconsideration is denied.

(J.A. pp. 7-9 (footnote omitted).)

After twice being rebuffed by the Benefits Review Board in its attempts to have the ALJ's decision overturned, Wolf Creek now appeals to this Court seeking review of the Board's decisions. As indicated, the arguments presented by

reports of Drs. Renn and Castle and to the unsubstantiated summary statement of Dr. Kraman because these doctors never actually examined Mr. Stephens. Finding no basis for a ruling of mistake, the ALJ denied the employer's modification request on April 28, 1998, explaining:

. . . To pass the threshold test in its request for modification, the Employer must show a mistake in determination of fact in [the] prior decision. . . .

I have reviewed my prior decision dated January 22, 1996 and the medical evidence considered at that time and find no mistake in determination of any fact. Dr. Hieronymus examined the Miner on numerous occasions between 1981 and December 22, 1989, the date of the Miner's death. The most recent examinations by Drs. Broudy and Wright were in 1981. As the Miner's treating physician, Dr. Hieronymus was best suited to make an assessment of the Miner's condition over a period of time. I find his opinion entitled to more weight than the other doctors of record. *See Tussey v. Island Creek Coal Co.*, 982 F.2d 1036, 1042 (6th Cir. 1993) (more weight may be accorded to the conclusions of a treating physician because he is more likely to be familiar with the miner's condition). Dr. Kraman never examined the Miner and his two letters do not explain the bases of his opinions. Due to the lack of support and detail in his letters, his opinions are entitled to little weight. *See Risher v. Office of Workers' Compensation Programs*, 940 F.2d 327, 331 (8th Cir. 1991) (stating that an administrative law judge may disregard medical opinion that does not adequately explain the basis for its conclusion). The consultative reports of Drs. Renn and Castle also fail to establish a mistake of fact. Although they correctly point out that Dr. Hieronymus relied on an erroneous smoking history, I considered this fact in my prior decision. The reliance on an erroneous smoking history is troubling but does not overcome the advantage Dr. Hieronymus had in treating the Miner over the period

from 1981 to 1989. Drs. Renn and Castle never examined the Miner and their opinions are entitled to less weight than the opinions of Dr. Hieronymus. . . .

The Employer, Wolf Creek Collieries, has not shown a change in conditions or a mistake in determination of fact and, therefore, its modification request must fail.

(J.A. pp. 26-27).

## WOLF CREEK'S APPEAL TO THE BENEFITS REVIEW BOARD

Wolf Creek subsequently appealed to the Benefits Review Board seeking to overturn the ALJ's decision. Just as it now argues before this Court, Wolf Creek's only argument before the Board was that the ALJ erred in crediting the medical opinion of Dr. Hieronymus as Mr. Stephens' treating physician. The Board found no merit in Wolf Creek's argument, explaining:

Employer contends that the administrative law judge erred in crediting the opinion of Dr. Hieronymous [sic] as his report is inaccurate as to the length of smoking history, and that the administrative law judge blindly credited this opinion without examining its substance. Employer also asserts that the administrative law judge refused to consider the merits of the highly qualified physicians Drs. Renn and Castle, and thereby violated the Administrative Procedure Act (APA). We disagree. The United States Court of Appeals for the Sixth Circuit, wherein jurisdiction of this case lies, has repeatedly held that treating physicians are entitled to greater weight. . . . Although the administrative law judge may discredit the opinion of a treating physician in light of the factors noted by employer, he is not required to do so. In the instant case, the administrative law judge fully considered the fact that Dr. Hieronymous [sic] noted an inaccurate length of smoking and therefore committed no error. Therefore, we affirm the administrative law

judge's decision to accord greater weight to the opinion of Dr. Hieronymous [sic], and affirm his finding that employer failed to establish a mistake in determination of fact. Furthermore, we reject employer's argument that the administrative law judge's decision does not comply with the APA, as the administrative law judge properly addressed the relevant evidence and provided a sufficient rationale for his findings.

Accordingly, the Decision and Order - Denial of Request for Modification of the administrative law judge is affirmed.

(J.A. pp. 13-15 (citations omitted).)

## THE BOARD'S DENIAL OF WOLF CREEK'S MOTION FOR RECONSIDERATION

The Board re-affirmed its decision upholding the ALJ's decision in its subsequent decision and order denying Wolf Creek's motion for reconsideration. In so doing, the Board rejected out of hand Wolf Creek's contention that by crediting and relying upon Dr. Hieronymus' opinion, the ALJ and the Board had created a "treating physician preference":

[T]he administrative law judge did what the case law of the Sixth Circuit permits him to do, namely, examine the treating physician's opinion on its merits and make a reasoned judgment as to its credibility. None of the cases cited by employer *require* the administrative law judge to discredit a treating physician's opinion; indeed, they uphold the rule that these opinions are *generally* entitled to greater weight. The Board's Decision and Order correctly noted that the controlling cases of *Brown* and *Tussey* do not *require* the administrative law judge to consider other factors, and concluded that the administrative law judge fully considered the fact that Dr. Hieronymous [sic] recorded an inaccurate smoking history but nonetheless provided an adequate rationale for according the opinion greater weight. . . .