Gary HOWARD, Petitioner–Appellant,

v.

MARTIN COUNTY COAL CORP.; and Director, Office of Workers' Compensation Programs, United States Dep't of Labor, Respondent–Appellee.

No. 02–3656.

United States Court of Appeals, Sixth Circuit.

Dec. 19, 2003.

Leonard J. Stayton, Inez, KY, for Petitioner.

Douglas A. Smoot, Jackson & Kelly, Charleston, WV, Natalie Diane Brown, Jackson & Kelly, Lexington, KY, Patricia Nece, Jeffrey S. Goldberg, U.S. Department of Labor Office of the Solicitor, Washington, DC, for Respondent.

Before: BOGGS, Chief Judge; GIBBONS, Circuit Judge; and GWIN, District Judge.*

BOGGS, Chief Judge.

Petitioner Gary Howard appeals the decision of the Benefits Review Board ("BRB"), which affirmed the Administrative Law Judge's ("ALJ") denial of disability benefits under the Black Lung Benefits Act. 30 U.S.C. §§ 901–962. The ALJ found that Howard suffered from pneumoconiosis and was totally disabled. The ALJ found, however, that pneumoconiosis did not cause his disability and the BRB affirmed this finding. On appeal, the only question before this court relates to the ALJ's conclusion that pneumoconiosis did not cause Howard's disability. Because we find that the ALJ's conclusion with respect to causation was supported by substantial evidence and in accordance with applicable law, we affirm.

I

Howard initially brought his claim against Martin County Coal Corporation

---

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

("Martin Coal") on February 10, 1998. After a hearing, the ALJ found that Howard had worked as a coal sampler for Martin Coal from approximately 1978 to 1991, during which time he had been exposed to coal dust. The ALJ also found that Howard had smoked regularly from the ages of eighteen to fifty-three (he was fifty-eight at the time of the hearing in 1998).

To be entitled to benefits, Howard had to establish: (1) that he suffered from pneumoconiosis; (2) that his pneumoconiosis arose at least in part out of his coal mine employment; and (3) that he was totally disabled due to pneumoconiosis. 20 C.F.R. §§ 718.202–204. Although the medical reports were in conflict, the ALJ first determined that Howard suffered from pneumoconiosis. The ALJ also determined that because Howard had worked in the coal mines for over twelve years, he was entitled to the presumption that his pneumoconiosis arose from his coal mine employment. 20 C.F.R. 718.203(b). Finally, the ALJ concluded that Howard was both totally disabled and that his disability was due to pneumoconiosis. In light of these findings, the ALJ awarded Howard disability benefits.

On the issue of causation (i.e., whether pneumoconiosis caused the disability), the ALJ considered the opinions of five physicians. All five physicians had found that Howard was "totally disabled" under law due to a pulmonary/respiratory condition, though they differed about what caused the disability. Two of the physicians— Drs. Baker and Younes—found that Howard's pneumoconiosis contributed to his disability. Three of the physicians—Drs. Branscomb, Castle, and Dahhan—attributed Howard's disability solely to cigarette smoking. Of these five physicians, only Drs. Baker, Younes, and Dahhan actually examined Howard.[1] In addition, Drs. Branscomb, Castle, and Dahhan did *not* diagnose Howard with pneumoconiosis, even though the ALJ ultimately made a factual finding that Howard successfully established the existence of pneumoconiosis. All three of these doctors, however, concluded that even assuming that pneumoconiosis existed, Howard's disability would still have been caused by cigarette smoking and not pneumoconiosis.[2]

The ALJ explained:

Drs. Baker and Younes opined that coal workers' pneumoconiosis contributed to Mr. Howard's totally disabling condition. These physicians also determined that cigarette smoking was a contributing factor. On the other hand, Drs. Dahhan, Branscomb, and Castle solely attributed his impairment to cigarette smoking. Drs. Dahhan, Branscomb, and Castle did not *diagnose* pneumoconiosis, and therefore, I assign less weight to these opinions.

Martin Coal appealed the decision to the BRB. On Nov. 29, 2000, the BRB vacated the ALJ's decision with respect to causation, but affirmed the remainder of the ALJ's findings. Specifically, the BRB held that the ALJ erred by failing to give full consideration to the opinions of Dahhan, Branscomb, and Castle with respect to causation:

Initially. [Martin Coal] contends that the administrative law judge improperly discounted the opinions of Drs. Dahhan,

---

1. Branscomb and Castle did not physically examine Howard, but offered their "consultative opinions" based on a review of Howard's x-rays and medical records.

2. They justified this opinion by explaining that Howard's pulmonary and respiratory problems were not the kind of problems caused by pneumoconiosis. They were more consistent, the doctors stated, with damage from cigarette smoke.

Branscomb, and Castle on the basis that these physicians did not diagnose pneumoconiosis, when the administrative law judge had found the existence of pneumoconiosis established by the preponderance of x-ray evidence, because each physician nonetheless considered the effect that the presence of pneumoconiosis would have on their opinions regarding the etiology of claimant's total respiratory disability. [Martin Coal's] argument has merit.

In other words, because Drs. Dahhan, Branscomb, and Castle all stated that there was no causation *even assuming* the existence of pneumoconiosis, the BRB held that the ALJ erred by failing to fully assess their opinions with respect to causation. The BRB remanded the case back to the ALJ so that he could "reconsider the medical opinion evidence" relating to causation.

On remand, the ALJ decided that the opinions of Drs. Dahhan, Branscomb, and Castle "merit[ed] greater weight." The ALJ listed in some detail the various specific reasons offered by these physicians as to why Howard's disability was more consistent with cigarette smoking than with coal dust exposure. The ALJ also exhaustively reviewed the credentials of these three physicians on whom he relied in making his decision. On June 13, 2001, the ALJ denied Howard benefits, finding that Howard failed to establish that pneumoconiosis caused his disability. Howard appealed this decision to the BRB, which affirmed the ALJ's denial on May 20, 2002. Howard now timely appeals both the June 2000 and the May 2002 decisions of the BRB.

## II

Howard first argues that the BRB's initial decision in June 2000 to vacate the ALJ's findings with respect to causation was erroneous and should be reversed. Regardless of whether this decision constituted legal error, this court has no jurisdiction to review this decision of the BRB.

In *Bartley v. L & M Coal Co.*, this court explained:

Bartley contends first that we must focus our analysis upon the ALJ's 1981 decision awarding him benefits, which was vacated by the Board, rather than upon the ALJ's 1987 decision denying his claim, which the Board affirmed. The petitioner's contention proceeds from the erroneous assumption that we have jurisdiction to review Board action on an ALJ's decision that has since been reversed by the ALJ himself on remand. Our jurisdiction is limited to review of "final" orders from the Board. In this case, the Board order that the petitioner seeks to attack merely vacated the ALJ's initial award of benefits and remanded the claim for reconsideration in light of the appropriate legal standard. Because a Board order that remands a case to an ALJ for further findings is not reviewable as a final order, we have no authority to review the ALJ's first resolution of the petitioner's claim. Moreover, the ALJ's initial decision, having since been vacated and then reversed by the ALJ himself, cannot constitute the final disposition of the claim subject to review at this juncture.

901 F.2d 1311, 1313 (6th Cir.1990) (internal citations and internal quotation marks omitted). *Bartley* makes it clear that this court lacks jurisdiction to review the first order.

## III

The only decision properly before this court is the ALJ's June 2001 denial of benefits and the BRB's May 2002 decision affirming that denial. In *Wolf Creek Collieries v. Director, OWCP*, 298 F.3d 511,

519–20 (6th Cir.2002), this court outlined its approach to reviewing black lung disability claims. As *Wolf Creek Collieries* makes clear, we apply a very deferential standard of review:

> [D]ecisions of the Board must be affirmed unless the Board has committed legal error or exceeded its scope of review of the ALJ's findings. The ALJ's findings are conclusive if they are supported by substantial evidence and are in accordance with the applicable law. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. In deciding whether the substantial evidence requirement is satisfied, we consider whether the administrative law judge adequately explained the reasons for crediting certain testimony and evidence over other evidence in the record in deciding either to award or deny benefits. We do not reweigh the evidence or substitute our judgment for that of the ALJ. Thus, we will not reverse the conclusions of an ALJ that are supported by substantial evidence, even if the facts permit an alternative conclusion. Finally, when dealing with a claim for benefits, we keep in mind that the Black Lung Benefits Act is remedial in nature and must be liberally construed to include the largest number of miners as benefit recipients.

*Id.* at 519–20 (internal citations and internal quotation marks omitted). Thus, this court's scope of review is limited to determining whether the BRB properly found that the ALJ's June 13, 2001 decision was supported by substantial evidence and was consistent with the applicable law.

In his finding that pneumoconiosis did not cause Howard's disability, the ALJ relied on opinions from three physicians (Drs. Branscomb, Castle, and Dahhan). Howard argues that these medical opinions do not constitute "substantial evidence" because (1) all three of these physicians had concluded that no pneumoconiosis existed; (2) Drs. Branscomb and Castle did not physically examine Howard; and (3) these medical opinions conflicted with federal regulations. We address each argument in turn.

## A

Howard first invites this court to hold that the ALJ erred as a matter of law in finding that the opinions of Drs. Branscomb, Castle, and Dahhan constituted "substantial evidence" (that Howard's disability was not caused by pneumoconiosis) given their failure to diagnose pneumoconiosis. This court, however, has never required (or even permitted) an ALJ to discredit automatically a disability causation opinion solely because the physician failed to diagnose pneumoconiosis (in cases where the ALJ had concluded that pneumoconiosis existed). The more appropriate question for this court to determine is how much weight these physicians' causation opinions should be given. Although neither side cited it, the controlling case in this circuit (with respect to this question) is *Skukan v. Consolidation Coal Co.*, 993 F.2d 1228 (6th Cir.1993), *vacated on other grounds*, 512 U.S. 1231, 114 S.Ct. 2732, 129 L.Ed.2d 854 (1994).[3]

■ In *Skukan*, this court reversed a denial of benefits where the ALJ relied on

---

**3.** Howard argues that this court should look to *Tussey v. Island Creek Coal Co.*, 982 F.2d 1036, 1042 (6th Cir.1993), in which this court stated that a physician's opinion lacked "probative value" because of the failure to diagnose pneumoconiosis when that had already

been established by the ALJ. *Tussey* is distinguishable, however, in that this language applied to the question of whether Tussey was totally disabled, not whether pneumoconiosis caused the disability. Here, all the doctors conceded that Howard is disabled.

the opinions of physicians who did not diagnose pneumoconiosis to establish that a claimant's disability was not caused by pneumoconiosis. Similarly to our case, the ALJ had found that pneumoconiosis did exist. *Skukan*, 993 F.2d at 1232. We explained, "[w]hile we have stated in an unpublished opinion that the ALJ may consider opinions of physicians who found no pneumoconiosis when making the determination of causation, we conclude that the better way for the ALJ to proceed is to treat as less significant those physicians' conclusions about causation when they find no pneumoconiosis." *Id.* at 1233. *Skukan*, however, did not establish a *per se* rule that prohibits an ALJ from considering the opinions. Instead, *Skukan* instructs the ALJ to treat the opinions regarding causation as "less significant." The question here is whether the ALJ's decision was consistent with *Skukan*. We hold that it was.

While it is true that this court in *Skukan* reversed a denial of benefits where the ALJ had relied on physicians who failed to diagnose pneumoconiosis, *Skukan* was substantially different than the case now before this court. First, the physician in *Skukan* did not state that his causation opinion would be the same even assuming the existence of pneumoconiosis. In our case, all three doctors stated explicitly that their opinion would not change even assuming the existence of pneumoconiosis. Second, in *Skukan*, the doctors in question had failed to find "total disability." 993 F.2d at 1233. Here, all five doctors agreed that Howard was totally disabled. Finally, the ALJ (in this case) noted and approved specific reasons given by the three doctors supporting their opinion that the disability should be attributed to smoking rather than to pneumoconiosis, assuming its existence. Obviously, if an ALJ relies on opinions from physicians whose conclusions should be given less weight,

the ALJ must provide specific and persuasive reasons for doing so. In this case, the ALJ provided detailed and specific reasons explaining why the doctors had concluded that Howard's disability resulted solely from cigarette smoking, even assuming the existence of pneumoconiosis. Accordingly, the opinions of Drs. Branscomb, Castle, and Dahhan can legally constitute the "substantial evidence" necessary to support the ALJ's conclusion that pneumoconiosis did not cause Howard's disability.

Alternatively, Howard urges this court to follow the Fourth Circuit's ruling in *Scott v. Mason Coal Co.*, 289 F.3d 263 (4th Cir.2002). In *Scott*, the Fourth Circuit reversed a denial of benefits where the ALJ, in making the causation determination, improperly relied on the opinions of physicians who did not diagnose pneumoconiosis. *Id.* at 268–70. Howard correctly points out that *Scott*, decided roughly three weeks after the BRB's decision, called into question the two cases that the BRB cited in support of its conclusions— *Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir.1995) and *Hobbs v. Clinchfield Coal Co.*, 45 F.3d 819, 822 (4th Cir. 1995). In *Ballard*, the Fourth Circuit reversed the BRB, which had reversed the ALJ's denial of benefits after finding that the ALJ erred by giving weight to the disability causation opinions of physicians who had not diagnosed pneumoconiosis. 65 F.3d at 1192–93. In *Hobbs*, the Fourth Circuit affirmed a denial of benefits where the ALJ had found that pneumoconiosis existed, but found that it was not the cause of the claimant's disability. In doing so, the ALJ relied on the physicians who failed to diagnose pneumoconiosis. *Hobbs*, 45 F.3d at 821–22.

Howard also adds that following the holding in *Scott* would ensure a uniform application of federal law by the circuits. Although *Scott* shares some factual simi-

larities with this case, a close reading shows that this ruling is completely consistent with the Fourth Circuit's decision. The Fourth Circuit did not establish a *per se* rule that the physicians' opinions could not constitute "substantial evidence." Instead, the court explained that with respect to the causation opinions of physicians who failed to diagnose pneumoconiosis, the "ALJ could only give weight to those opinions if he provided specific and persuasive reasons for doing so, and those opinions could carry little weight, at the most." *Scott,* 289 F.3d at 269. While this decision imposes a significant obstacle for the physicians' opinions to overcome, we believe that the opinions cited by the ALJ did in fact present enough specific and persuasive reasons to overcome this burden. Thus, even if we followed Fourth Circuit precedent rather than our own, we cannot say the ALJ's conclusion was not supported by "substantial evidence."

### B

■ Howard's second major argument is that the ALJ erred by giving greater weight to Drs. Branscomb and Castle, both of whom never physically examined Howard. First, this court recently stated that opinions of treating physicians are no longer entitled to greater weight. *Eastover Mining Co., v. Williams,* 338 F.3d 501, 509 (6th Cir.2003) ("Despite a certain degree of lingering confusion among the courts of appeals, it has become overwhelmingly evident that the testimony of the 'treating physician' receives no additional weight."). Second, even assuming the opinions should receive greater weight, Dr. Dahhan personally examined Howard before making

his conclusions. Thus, Howard's argument lacks merit.

### C

■ Howard also attacks each of the three doctors' medical opinions individually, contending they cannot constitute "substantial evidence" under the applicable federal regulations. Howard makes two general arguments, both of which allege that the doctors' opinions ignored the legal definitions of pneumoconiosis provided by 20 C.F.R. § 718.201. First, Howard argues that the physicians disregarded the definitions of pneumoconiosis established by 20 C.F.R. § 718.201(a)(2) in reaching their conclusions.[4] For example, Howard takes issue with Dr. Castle's observation that medical pneumoconiosis tends to cause a mixed, irreversible obstructive and restrictive ventilatory impairment. According to Castle, however, Howard's impairment showed signs of reversibility, consistent with smoke-induced chronic bronchitis and bronchial asthma. Howard points out that, according to the legal definition of pneumoconiosis, *any* obstructive impairment caused by coal dust would suffice to establish causation. 20 C.F.R. § 718.201(a)(2). Similarly, Howard alleges that Dr. Dahhan disregarded federal regulations when he based his causation opinion on the conclusion that Howard had an obstructive, rather than a restrictive, impairment. Howard responds that 20 C.F.R. § 718.201(a)(2) explicitly defines legal pneumoconiosis as including "any ... obstructive pulmonary disease arising out of coal mine employment." The problem with this entire line of argument is that the federal regulations require that the relevant impairment "aris[e] out of coal

---

**4.** This regulation states: " 'Legal pneumoconiosis' includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment. This definition includes, but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2).

mine employment." Because all three physicians concluded that Howard's impairments resulted from *smoking*, rather than coal dust, these opinions did not contravene federal regulations.

Second, Howard points to Dr. Castle's opinion, which seemed to state that because Howard's disease continued to progress after he left the mines, the disease should be attributed to smoking rather than pneumoconiosis. Howard contends that this reasoning is inconsistent with 20 C.F.R. § 718.201(c), which "recognize[s pneumoconiosis] as a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure." Even assuming that Howard correctly characterized Dr. Castle's opinion and that this opinion violated federal regulations, there were clearly a number of other reasons provided by the doctors that provided more than enough substantial evidence for the ALJ's conclusion. Rather than relying solely on Castle's opinion with respect to the progression of Howard's impairment, the ALJ offered a number of other specific reasons why Howard's disability should be attributed to cigarette smoking. For example, Dr. Dahhan concluded that the damage to Howard's alveolar sacs were consistent with a type of emphysema that resulted from smoking.[5] In addition, Dr. Castle found that Howard's condition showed some reversibility, which was consistent with smoking and not pneumoconiosis.

We emphasize that this court must not "reweigh the evidence or substitute our judgment for that of the ALJ." *Wolf Creek*

*Collieries*, 298 F.3d at 519–20. Our only task is to determine whether substantial evidence supported the ALJ's conclusion, even "if the facts permit[ted] an alternative conclusion." *Ibid.* Given the deferential standard of review we must apply, we hold that the ALJ's findings were supported by substantial evidence.

## IV

The order of the BRB affirming the ALJ's denial of benefits is AFFIRMED.

---

**5.** Dr. Dahhan explained, "[i]t is known that simple coal workers' pneumoconiosis can cause a type of emphysema known as focal emphysema. However, this type of emphysema simply causes a dilatation of the alveolar ducts and is not associated with the destruction of the alveolar sacs nor does it cause any significant alteration in the respiratory reserve. On the other hand, cigarette smoke can cause centrilobular emphysema[,] a type of emphysema that does cause destruction of the alveolar sacs and significant alterations in the respiratory mechanics and ventilatory reserve."