NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0798n.06

No. 11-3574

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***Jul 23, 2012***

LEONARD GREEN, Clerk

| | |
|---|---|
| LITTLE DAVID COAL CO. and OLD REPUBLIC INSURANCE CO., | ) ) ) |
| Petitioners-Appellants, | ) ) |
| v. | ) ) |
| DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, and BILLY COLLINS, | ) ) ) ) ) |
| Respondents-Appellees. | ) ) ) |

ON PETITION FOR REVIEW OF ORDERS OF THE BENEFITS REVIEW BOARD, UNITED STATES DEPARTMENT OF LABOR

Before:  KEITH, GIBBONS, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD**, Circuit Judge.  Little David Coal Mining Company and its insurance carrier, Old Republic Insurance Company (collectively, "Little David"), petition the court for review of a Benefits Review Board ("BRB") decision affirming an award of benefits to Respondent Billy Collins, now deceased, under the Black Lung Benefits Act ("BLBA"), 30 U.S.C. § 932(a).  The Administrative Law Judge ("ALJ") found that Collins was entitled to benefits because he suffered from a totally disabling respiratory impairment that qualified as "legal pneumoconiosis," as defined by 20 C.F.R. § 718.201.  For the reasons discussed herein, we **AFFIRM**.

**I.**

Billy Collins worked intermittently as a coal miner between 1974 and 1991.[1] His last mining job was as a roof bolter, one of the dustiest jobs in the mine. Also, from approximately 1958 until 1996, Collins smoked one-half to three-quarters of a pack of cigarettes per day. It is undisputed that Collins suffered from a chronic and severe respiratory ailment that rendered him totally disabled from performing his former work as a coal miner. The disputed issue is whether Collins's disabling condition constituted "legal pneumoconiosis" as defined by 20 C.F.R. § 718.201.[2]

In 1991, Collins filed his initial claim for federal black lung benefits, which was denied. Collins pursued numerous appeals and requests for modification, all of which were unsuccessful until 2004, when an ALJ granted Collins's modification petition on the ground that Collins's condition had changed and that he had become totally disabled due to pneumoconiosis. Little David appealed to the BRB, which vacated a certain portion of the ALJ's decision and remanded for further proceedings. On July 22, 2009, the ALJ issued his decision on remand, which granted Collins's request for modification and awarded him benefits. On appeal, the BRB affirmed the award and

---

[1] The ALJ credited Collins with a total of seven years of coal mine employment, and this finding has not been challenged.

[2] Compensable pneumoconiosis takes two forms, "clinical" and "legal." 20 C.F.R. § 718.201(a). Clinical pneumoconiosis refers to a cluster of diseases recognized by the medical community as fibrotic reactions of lung tissue to the "permanent deposition of substantial amounts of particulate matter in the lungs." 20 C.F.R. § 718.201(a)(1). It is generally diagnosed by chest x-ray, biopsy, or autopsy. 20 C.F.R. §§ 718.102; 718.106; 718.202(a)(1)-(2). Legal pneumoconiosis refers to "any chronic lung disease or impairment . . . arising out of coal mine employment" and specifically includes "any chronic restrictive or obstructive pulmonary disease." 20 C.F.R. § 718.201(a)(2). A disease arises out of coal mine employment if it is "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b).

denied Little David's subsequent motion for reconsideration. Little David then petitioned this court

for review.

**II.**

A.

Our review is limited to determining whether the ALJ's decision is supported by substantial

evidence and is consistent with applicable law. *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d

244, 246 (6th Cir. 1995). "When the question is whether the ALJ reached the correct result after

weighing conflicting medical evidence, our scope of review . . . is exceedingly narrow. Absent an

error of law, findings of facts and conclusions flowing therefrom must be affirmed if supported by

substantial evidence." *Consolidation Coal Co. v. Worrell*, 27 F.3d 227, 230-31 (6th Cir. 1994)

(citation omitted). "Substantial evidence is more than a scintilla of evidence, or that which a

reasonable mind might accept as adequately supporting a conclusion." *Webb*, 49 F.3d at 246 (citing

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In determining whether substantial evidence

supports the ALJ's decision, we consider "whether the ALJ adequately explained the reasons for

crediting certain testimony and documentary evidence over other testimony and documentary

evidence." *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 478 (6th Cir. 2011) (citing *Peabody

Coal Co. v. Hill*, 123 F.3d 412, 415 (6th Cir. 1997)). Even if the facts permit a different conclusion,

we will not reverse so long as the ALJ's conclusion is supported by the evidence. *Webb*, 49 F.3d at

246 (citing *Neace v. Director, OWCP*, 867 F.2d 264, 267 (6th Cir.1989)).

B.

On appeal, Little David alleges violations of both the Administrative Procedure Act ("APA") and the Due Process Clause. Little David argues that the ALJ effectively applied a "consistency with the preamble" rule, crediting the opinion of one medical expert over another primarily because it was consistent with the preamble to the 2001 amendments to the Department of Labor's ("DOL") regulations. In particular, Little David accuses the ALJ and the BRB of relying on the preamble as a source of "binding legal standards and criteria" that created, in effect, "an irrebuttable presumption or a legislative criterion that prohibited acceptance of a competent doctor's opinion that Collins's lung disease was related exclusively to cigarette smoking." According to Little David, this violated the APA because the preamble, unlike the regulations themselves, was not subject to notice and comment as required by the APA's rule-making procedures. *See* 5 U.S.C. § 553. In addition, Little David alleges it was denied a fair hearing in violation of the Due Process Clause because it was not afforded an opportunity to challenge the medical and scientific evidence summarized in the preamble.

The 2001 amendments to the DOL regulations sought to resolve the scientific question of whether coal mine dust exposure can cause obstructive respiratory impairments. The affirmative answer to that question resulted in the DOL's recognition of "legal pneumoconiosis," which, the preamble explains, "does not create a new medical diagnosis, but rather reflects the statute's definition of the disease as 'a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, *arising out of coal mine employment*.'" 65 Fed. Reg. 79923 (Dec. 2000) (emphasis added) (quoting 30 U.S.C. § 902(b)). In other words, the new distinction is a legal

one, not a medical one. *Id.* at 79937. This, the preamble notes, is consistent with "the prevailing view of the medical community and the substantial weight of the medical and scientific literature . . . that exposure to coal mine dust may cause chronic obstructive pulmonary disease." *Id.* at 79923.

The preamble to the amendments presents a detailed account of the medical and scientific literature supporting the DOL's conclusion that exposure to coal mine dust can cause such ailments. 65 Fed. Reg. 79937-45 (Dec. 20, 2000). The preamble explains the guidance that the National Institute for Occupational Safety and Health ("NIOSH") provided DOL in addressing objections to the proposed amendments, including NIOSH's own "exhaustive review and analysis of the relevant scientific and medical evidence." *Id.* at 79938. As part of its review, NIOSH specifically evaluated "the role smoking plays in a coal miner's respiratory status." *Id.* The preamble also summarizes other medical literature addressing both coal dust exposure and smoking as they relate to pneumoconiosis. It concludes that exposure to coal dust is clearly associated with severe respiratory impairments even in the absence of smoking and that "[s]mokers who mine have additive risk for developing significant obstruction." *Id.* at 79940.

Little David's argument that the DOL circumvented the APA's procedural protocols by "rewriting" the regulation in the preamble is not persuasive. The preamble does not itself impose any substantive rules or requirements, but simply summarizes the medical and scientific evidence upon which the regulations are founded. Little David fundamentally disagrees with the validity of that medical and scientific evidence. The primary thrust of its argument is that the ALJ denied Little David a fair hearing by relying on these findings without affording it an opportunity to challenge their validity. However, Little David had ample opportunity to present evidence that would discount

the *premise* embodied in the preamble, if not the preamble itself: that coal mine dust exposure can cause legal pneumoconiosis. If Little David had proof, as it now claims, that the medical and scientific support for this premise is faulty, it had every incentive and opportunity to present such proof to the finder of fact. Instead Little David sought only to show that *Billy Collins's* coal mine dust exposure did not cause *his* pneumoconiosis. Whatever Little David's reason, strategic or otherwise, for not presenting such proof, we decline to characterize that decision as error on the part of the ALJ. We find that the ALJ's alleged "failure to give notice" that it would consider the preamble in weighing the evidence did not result in a denial of due process.

It was the ALJ's duty to consider the conflicting evidence and assign it weight as he saw fit based on the record as a whole. That record included the DOL regulations, which, in turn, include the preamble. Thus, it was permissible for the ALJ to turn to the preamble for guidance when determining the relative weight to assign two conflicting medical opinions. Although not binding authority, the preamble, much like the "rulings, interpretations and opinions" of an agency,"constitute[s] a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). The preamble is an instructive resource that explains the DOL's evaluation of conflicting medical and scientific literature on the same complex issues with which the ALJ in this case was confronted. In the face of conflicting opinions from two credible sources, it was reasonable for the ALJ to give greater

weight to the testimony of the medical expert whose opinion was supported by the prevailing view of the medical and scientific community as reflected in the regulatory preamble.[3]

## C.

Having determined that the ALJ committed no error of law, we consider whether the ALJ's decision is supported by substantial evidence. Former coal miners who are totally disabled by pneumoconiosis are entitled to federal benefits pursuant to the BLBA. "To establish entitlement to benefits, the claimant must prove by a preponderance of the evidence that (1) he has pneumoconiosis; (2) his pneumoconiosis arose at least in part out of his coal mine employment; (3) he is totally disabled; and (4) the total disability is due to pneumoconiosis." *Morrison*, 644 F.3d at 478 (footnote omitted). The parties agree that Collins suffered from a severe respiratory impairment that rendered him totally disabled. The issue is whether Collins's condition qualified as "legal pneumoconiosis," *i.e.*, whether his occupational exposure to coal mine dust contributed to or substantially aggravated his condition.

The weighing of medical evidence "is a matter of credibility left to the trier of fact." *McCain v. Dir., Office of Workers Comp. Programs*, 58 F. App'x 184, 193 (6th Cir. 2003). In determining that Collins was entitled to benefits, the ALJ evaluated the testimony of several medical experts.

---

[3] Moreover, Little David overstates the degree to which the ALJ's decision appears to have been influenced by the preamble to the DOL regulations. Contrary to Little David's assertions, the ALJ did not treat the preamble as a set of binding legal standards or dispositive rules. In fact, the ALJ's order does not even reference the preamble specifically, but rather makes only passing reference to the regulatory materials generally. In no way did the ALJ indicate that these materials formed the basis of his opinion; he merely stated that "the regulatory materials are more consistent" with Collins's expert's opinion than Little David's. This observation does not warrant reversal.

After rejecting much of the medical evidence as insufficient or inadequately explained,[4] the ALJ discussed in depth the opinions of the two medical experts he found credible: Dr. Rasmussen, who testified that Collins's condition arose, in part, out of his coal mine employment, and Dr. Hippensteel, who attributed Collins's condition solely to smoking. The ALJ noted "consensus among the physicians rendering medical opinions that [Collins] suffers from some form of totally disabling respiratory impairment," but also disagreement regarding the etiology of Collins's disease.

The ALJ summarized the opinions of Dr. Rasmussen and Dr. Hippensteel, taking note of (1) their supporting documentation; (2) the employment, smoking, and family histories upon which they relied; (3) their relative qualifications; and, (4) their explanations for their respective conclusions. The ALJ noted that Dr. Hippensteel is a pulmonary specialist, while Dr. Rasmussen is board certified in internal medicine with a subspecialty in pulmonary medicine. The ALJ found that Dr. Rasmussen is "an acknowledged expert in the field of pulmonary impairments of coal miners" and noted his extensive experience, as recognized by the Sixth Circuit, "in pulmonary medicine and in the specific area of coal workers' pneumoconiosis." He also found that only Dr. Rasmussen had done more recent research and writing on the subjects of pneumoconiosis and COPD. Thus, the ALJ concluded

---

[4] The ALJ accorded little weight to the opinions of Drs. Nida, Aggarwal, and Fino. Dr. Nida made a definitive diagnosis of chronic obstructive pulmonary disease ("COPD") and coal workers' pneumoconiosis based on Collins's pulmonary function tests and an x-ray reading by another doctor. The ALJ found Dr. Nida's opinion of little probative value because that it was "neither well-documented nor based on extensive data." Likewise, the ALJ found that Dr. Aggarwal's diagnosis of severe COPD and coal workers' pneumoconiosis was "without sufficient basis" because he omitted any reference to Collins's smoking history, recent x-rays, or objective tests. Finally, the ALJ accorded little weight to Dr. Fino's opinion—that Collins suffered from emphysema due solely to smoking—because Dr. Fino "fail[ed] to account for the presence of legal pneumoconiosis[,] which does not require a clinical diagnosis."

that Dr. Rasmussen was "the best qualified physician to render an opinion on this issue in this record." The ALJ then determined that Dr. Rasmussen's opinion that both smoking and coal dust exposure contributed to Collins's condition was consistent with Collins's work history, medical history, objective testing, and prevailing medical science. Accordingly, the ALJ assigned greater probative weight to Dr. Rasmussen's opinion, which he found sufficient to establish the presence of legal pneumoconiosis.

The record contains sufficient evidence to support the ALJ's decision. While a different trier of fact might have found Dr. Hippensteel's opinion more compelling, the ALJ adequately explained his reasons for crediting Dr. Rasmussen's opinion more than Dr. Hippensteel's. In particular, the ALJ found that Dr. Rasmussen's explanation was more cogent than Dr. Hippensteel's because the latter did not discuss legal pneumoconiosis as set forth in the amended regulations and did not accept that Collins's condition, even if congenital, might have been aggravated by coal mine dust exposure. The ALJ also accepted as "more rational" Dr. Rasmussen's explanation that "cigarette smoking and coal mine dust cause identical forms of emphysema causing identical cellular and enzymatic processes to destroy lung tissue."

The ALJ in this case had to reconcile the conflicting medical opinions of two well-qualified and credible sources. In light of the extensive research establishing the known pulmonary risks and hazards associated with both cigarette smoking and coal mine dust exposure, the ALJ gave greater weight to the opinion that accounted for the likely contributions that each of these factors made to Collins's condition. Because there is substantial evidence in the record to support the ALJ's decision, it will not be disturbed.

**III.**

We find that the ALJ acted within the scope of his discretionary authority in consulting the preamble for guidance when weighing conflicting medical evidence and that, in so doing, the ALJ violated neither the APA nor the Due Process Clause. Because we find that substantial evidence supports the ALJ's conclusion that Collins is entitled to benefits, we **AFFIRM**.