**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0206n.06

Case No. 13-3499

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 18, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LEMARCO, INC.; OLD REPUBLIC INSURANCE COMPANY, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) ) | ON PETITION FOR REVIEW OF AN ORDER OF THE BENEFITS REVIEW BOARD |
| NANCY HELTON, Widow of Wayne Helton; DIRECTOR, OFFICE OF THE WORKERS' COMPENSATION PROGRAMS; UNITED STATES DEPARTMENT OF LABOR, | ) ) ) ) ) | |
| Respondents. | ) | |

BEFORE: KEITH, COOK, and KETHLEDGE, Circuit Judges.

COOK, Circuit Judge. A coal company and its insurer (collectively "Lemarco") petition this court for review of an award of black-lung benefits to Nancy Helton, the widow of former miner Wayne Helton. Discerning no legal error and finding that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion, we deny the petition.

I.

Wayne worked as a coal miner for over thirteen years. After he died, Nancy filed for survivor benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*, as a dependent of a miner who died from pneumoconiosis, commonly known as black-lung disease. The Department of Labor ("DOL") processed the claim, and the case proceeded to an ALJ for a hearing. To

prevail, Nancy needed to show that pneumoconiosis—defined as a chronic lung disease arising out of coal mine employment, *see* 20 C.F.R. § 718.201(a)(2)—caused Wayne's death. *Wolf Creek Collieries v. Dir., OWCP*, 298 F.3d 511, 520 (6th Cir. 2002) (citing 20 C.F.R. § 718.205).

In assessing the claim, the ALJ looked to the opinions of four doctors. Nancy submitted opinions from Dr. William Clarke, an examining physician, and Dr. Rachel Eubank, Wayne's treating physician for the last three years of his life. These doctors confirmed Wayne's pneumoconiosis on the basis that coal dust caused his chronic obstructive pulmonary disease ("COPD"). Dr. Eubank also linked pneumoconiosis to Wayne's death. Lemarco submitted opinions from Dr. David Rosenberg and Dr. Matthew Vuskovich, who, after reviewing Wayne's medical records, each concluded that coal dust played no role in causing his COPD and that pneumoconiosis did not hasten his death.

The ALJ held that Nancy proved the required elements by a preponderance of the evidence, according Lemarco's doctors' opinions "little weight" as flawed and conflicting with the DOL's positions as articulated in the preamble to the Black Lung Act's regulations. The ALJ credited Drs. Clarke and Eubank and determined that because Wayne suffered from COPD that arose out of his coal mine employment, he had pneumoconiosis. From that conclusion, the ALJ relied on Dr. Eubank's report to find that pneumoconiosis hastened Wayne's death because his COPD led to cor pulmonale (heart strain resulting from a lung disease), which directly caused his death from congestive heart failure.

Lemarco appealed to the Benefits Review Board ("BRB"), which affirmed Nancy's award. After unsuccessfully moving for reconsideration before the BRB, Lemarco petitioned this court for review, arguing that the record fails to establish that: (1) Wayne's COPD arose out of coal mine employment, and (2) pneumoconiosis caused Wayne's death.

II.

Our review of the BRB's decision "is limited to correcting errors of law and ensuring that [it] adhered to the substantial evidence standard in its review of the ALJ's factual findings." *Cumberland River Coal Co. v. Banks*, 690 F.3d 477, 482 (6th Cir. 2012) (internal quotation marks omitted). "Substantial evidence is defined as relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Arch of Kentucky, Inc. v. Dir., OWCP*, 556 F.3d 472, 477 (6th Cir. 2009). "In deciding whether the substantial evidence requirement is satisfied, we consider whether the [ALJ] adequately explained the reasons for crediting certain testimony and evidence over other evidence in the record." *Wolf Creek Collieries*, 298 F.3d at 519. We do not reweigh the evidence or substitute our judgment for that of the ALJ, and thus reverse only if substantial evidence fails to support the decision below. *Peabody Coal Co. v. Groves*, 277 F.3d 829, 833 (6th Cir. 2002).

A. *COPD Arising Out of Coal Mine Employment*

Lemarco first argues that the record fails to support the ALJ's conclusion that Wayne's COPD "arose out of" his coal mine employment. "[A] disease 'arising out of coal mine employment' includes any chronic pulmonary disease . . . significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b). In finding Wayne's COPD significantly related to or aggravated by coal dust, the ALJ first looked to Dr. Clarke's opinion "that the most likely cause" of Wayne's disease was "the breathing of the irritants of coal mine employment." Dr. Clarke could "not find any other significant etiology for [Wayne's] disability." (*Id.*) The ALJ rationally found that Dr. Clarke's opinion deserved "some weight" insofar as he "took histories, performed objective testing and examined" Wayne, and then explained his report in light of a chest x-ray, pulmonary function test, and Wayne's

symptoms. Dr. Eubank, Wayne's treating physician for the last three years of his life, corroborated Dr. Clarke's opinion, finding that Wayne's disease arose out of coal mine employment.[1] Reasonable minds might accept the reports of Drs. Clarke and Eubank as adequate to support the ALJ's conclusion that Wayne had pneumoconiosis.

Lemarco also asserts that the ALJ treated the preamble to the DOL's regulations as binding in determining the credibility of the doctors. When assessing a doctor's credibility, the ALJ may consult the preamble as a statement of medical principles accepted by the DOL. *A&E Coal Co. v. Adams*, 694 F.3d 798, 801-02 (6th Cir. 2012); *see also Little David Coal Co. v. Dir., OWCP*, 532 F. App'x 633, 636 (6th Cir. 2012) ("[I]t was permissible for the ALJ to turn to the preamble for guidance when determining the relative weight to assign two conflicting medical opinions."). The ALJ acted reasonably within its discretion here, determining that Lemarco's doctors deserved less weight given the clash between aspects of their opinions and DOL standards. Specifically, Dr. Rosenberg excluded coal dust as a cause of Wayne's COPD due to a lack of fibrosis, even though a claimant need not show fibrosis to establish pneumoconiosis. *See Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 576 (6th Cir. 2000) (discounting a doctor's opinion that relied on a lack of fibrosis). And Dr. Vuskovich attributed Wayne's COPD entirely to cigarette smoking but "offered no explanation" for excluding coal dust as at least a "contributing factor," thus failing to address DOL's position that coal dust and smoking may combine to cause pneumoconiosis.[2] *See* 65 Fed. Reg. 79,940 (Dec. 20, 2000).

---

[1] Lemarco also appears to challenge the credibility of these opinions, but this determination belongs to the ALJ as the factfinder and exceeds our scope of review. *See Wolf Creek Collieries*, 298 F.3d at 522; *Peabody Coal Co.*, 277 F.3d at 836; *Moseley v. Peabody Coal Co.*, 769 F.2d 357, 360 (6th Cir. 1985).

[2] Lemarco also suggests that the Administrative Procedure Act required the ALJ to notify the parties of any intent to use the preamble, but our precedent holds otherwise. *A&E Coal Co.*, 694 F.3d at 802.

Moreover, the ALJ gave additional convincing reasons (beyond the preamble) for discounting the credibility of these doctors' reports. The ALJ noted that Dr. Vuskovich determined that Wayne showed no signs of cor pulmonale, contravening the cardiovascular-disease specialists who examined him. Though Lemarco maintains that Dr. Vuskovich made no such determination, his report stated unequivocally that "there was no evidence of chronic cor pulmonale." Additionally, the ALJ discredited Dr. Rosenberg's opinion that attributed Wayne's obstructive disease to his congestive heart failure while ignoring the uncontested evidence that the obstructive disease predated the congestive heart failure. Lemarco questions the ALJ's characterization of Dr. Rosenberg's opinion, but the record reflects that Dr. Rosenberg did consider Wayne's lung disease "consequent to congestive heart failure."

### B. Death Due to Pneumoconiosis

Lemarco further maintains that, because the record fails to show that pneumoconiosis "substantially contribut[ed]" to Wayne's death, Nancy cannot qualify for survivorship benefits. But because "[p]neumoconiosis is a 'substantially contributing cause' of a miner's death if it hastens the miner's death," 20 C.F.R. § 718.205(b)(6), Nancy could satisfy this standard by providing medical evidence describing "a specifically defined process" by which pneumoconiosis "reduce[d] the miner's life by an estimable time." *Eastover Mining Co. v. Williams*, 338 F.3d 501, 518 (6th Cir. 2003).

As the ALJ rationally explained, Dr. Eubank's opinion, supported by medical records, provided sufficient evidence to establish that pneumoconiosis substantially contributed to Wayne's death, qualifying Nancy for survivor benefits. Dr. Eubank concluded that Wayne's COPD led to cor pulmonale, which directly caused his death from congestive heart failure. The

ALJ then explained how Wayne's treatment records supported Dr. Eubank's conclusion—cardiovascular-disease specialists diagnosed, and confirmed via a catheterization, congestive heart failure and cor pulmonale. Moreover, Wayne's death certificate listed the cause of death as "congestive heart failure due to cor pulmonale as a consequence of [COPD]." *Cf. Lango v. Dir., OWCP*, 104 F.3d 573, 577 (4th Cir. 1997) (finding insufficient evidence of causation where the death certificate and doctor's statement failed to explain how pneumoconiosis hastened the decedent's death).

After explaining why Dr. Eubank's opinion deserved controlling weight, the ALJ identified specific flaws in the reports of Lemarco's doctors. Dr. Vuskovich denied that Wayne had cor pulmonale near the end of his life, and Dr. Rosenberg offered no explanation for Wayne's hyponatremia (low sodium), while failing to address a theory that linked it to congestive heart failure. Further, as the BRB explained, Lemarco's doctors deserved diminished weight because they denied that Wayne had pneumoconiosis, contrary to the ALJ's earlier finding. *See Toler v. E. Associated Coal Co.*, 43 F.3d 109, 116 (4th Cir. 1995) (noting that if an ALJ determines that a claimant suffers from pneumoconiosis, a doctor who denied the existence of the disease will receive "little weight" in determining whether it caused the claimant's total impairment).

Lemarco nevertheless posits that Dr. Eubank's opinion is legally insufficient to establish causation, pointing to *Eastover Mining Co. v. Williams*, 338 F.3d 501 (6th Cir. 2003). There, a testifying physician concluded that pneumoconiosis hastened the miner's death because "lack of oxygen and his retained carbon dioxide all played an effect on all parts of his body." *Id.* at 517 (alteration omitted). We rejected this conclusion as legally inadequate because "[o]ne can always claim . . . that if pneumoconiosis makes someone weaker, it makes them less resistant to

other trauma." *Id.*; *see also Conley v. Nat'l Mines Corp.*, 595 F.3d 297, 303 (6th Cir. 2010) (finding statement that "the healthier we are, the better we're able to deal with serious problems" too general to link pneumoconiosis to death). Here, by contrast, Dr. Eubank specifically diagnosed that pneumoconiosis led to cor pulmonale, which directly caused Wayne's death from congestive heart failure. With this evidence, a reasonable person could conclude that pneumoconiosis hastened Wayne's death. *See Sandy Fork Min. Inc. v. Delphia Beverly*, 491 F. App'x 662, 663 (6th Cir. 2012) (finding sufficient evidence where doctor testified "that pneumoconiosis was the primary cause of the respiratory failure that killed [the decedent]").

### III.

We thus DENY the petition for review.