NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0326n.06

No. 17-3858

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ISLAND CREEK COAL COMPANY, | ) | |
| | ) | **FILED** |
| Petitioner, | ) | Jun 29, 2018 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON PETITION FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| ROBERT E. HILL; DIRECTOR, OFFICE OF | ) | BENEFITS REVIEW BOARD, |
| WORKERS' COMPENSATION PROGRAMS; | ) | U.S. DEPARTMENT OF |
| UNITED STATES DEPARTMENT OF LABOR, | ) | LABOR |
| | ) | |
| Respondents. | ) | |
| | ) | |

BEFORE:  KEITH, ROGERS, and KETHLEDGE, Circuit Judges.

**DAMON J. KEITH, Circuit Judge.**  Island Creek Coal Company petitions this court for review of an award of black-lung benefits to Robert E. Hill.  For the reasons discussed below, we **DENY** the petition.

## I.   BACKGROUND

### 1.  Statutory Framework

"The Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*, provides for the payment of black-lung benefits . . . to coal miners who are totally disabled due to pneumoconiosis, a 'chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment.'"  *Cent. Ohio Coal Co. v. Dir., Office of Workers' Comp. Programs*, 762 F.3d 483, 486 (6th Cir. 2014) (quoting 30 U.S.C. § 902(b)).  There are two forms of pneumoconiosis: clinical pneumoconiosis and legal pneumoconiosis.  *Id.*  "Clinical pneumoconiosis" encompasses certain lung diseases "that the medical community recognizes to

be caused by exposure to coal dust . . . diseases 'characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment.'" *Id.* (quoting 20 C.F.R. § 718.201(a)(1)).

"[Legal pneumoconiosis] goes beyond mere 'clinical pneumoconiosis'" and is "designed to facilitate the remedial purposes of the Black Lung Benefits Act." *Sunny Ridge Mining. Co. v. Keathley*, 773 F.3d 734, 738 (6th Cir. 2014). "'Legal pneumoconiosis' is a broad category encompassing '*any* chronic lung disease or impairment' arising out of employment as a coal miner." *Id.* at 738 (emphasis in original) (quoting 20 C.F.R. § 718.201(a)(2)). It includes, "but is not limited to, any chronic restrictive or obstructive pulmonary disease . . . ." 20 C.F.R. 718.201(a)(2).

"To establish entitlement to benefits, the claimant must prove by a preponderance of the evidence that (1) he has pneumoconiosis; (2) his pneumoconiosis arose at least in part out of his coal mine employment; (3) he is totally disabled; and (4) the total disability is due to pneumoconiosis (disability causation)." *Greene v. King James Coal Mining, Inc.*, 575 F.3d 628, 634 (6th Cir. 2009) (citing 20 C.F.R. §§ 718.202-04; *Adams v. Dir., OWCP*, 886 F.2d 818, 820 (6th Cir. 1989)). Pneumoconiosis "is deemed to 'aris[e] out of coal mine employment' if it is 'significantly related to' or was 'substantially aggravated by' dust exposure during the claimant's coal mine employment." *Cent. Ohio Coal*, 762 F.3d at 486 (quoting 20 C.F.R. § 718.201(b)). "A benefits claimant can establish the existence of pneumoconiosis with medical evidence such as a chest X-ray, autopsy or biopsy evidence, [] reasoned medical opinions, or by invoking an applicable presumption." *Id.*

## 2.  Robert Hill's Claim for Benefits

Robert Hill ("Hill") worked as a coal miner primarily for Island Creek Coal Company ("Island Creek") for 14 years and filed this claim for benefits on June 29, 2004.[1]  Administrative Law Judge ("ALJ") Jeffery Tureck initially heard this claim, and denied benefits on December 7, 2007.  On December 28, 2007, Hill requested modification of the denial of benefits.  The district director from the Office of Workers' Compensation Programs ("OWCP") issued a proposed Decision and Order denying the request for modification on June 23, 2008, which Hill appealed on June 26, 2008.  The claim was then referred to the office of Administrative Law Judges for hearing on September 9, 2008, and ALJ Daniel F. Solomon subsequently denied modification on March 11, 2010.

Hill appealed ALJ Solomon's decision to the Benefits Review Board ("Board") on April 5, 2010.  On April 29, 2011, the Board vacated ALJ Solomon's decision and remanded the claim for further consideration as to whether the parties were given the opportunity to properly designate evidence.  ALJ Solomon remanded the case to the district director on January 19, 2012.  The district director returned the file to the Office of Administrative Law Judges on July 19, 2012.

On March 17, 2015, ALJ Alice Craft held a formal hearing on the claim, and on May 24, 2016, she issued a Decision and Order granting Hill's modification request and awarded benefits.

---

[1] Miners with fifteen or more years of qualified coal mine employment, along with a totally disabling pulmonary impairment are rebuttably presumed to have both clinical and legal pneumoconiosis.  30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305.  Hill stipulated to having fourteen years of coal mine employment, and the parties agree that the fifteen year presumption does not apply.

### 3. ALJ Craft Awards Benefits to Hill

ALJ Craft found that Hill had a 40-pack-year cigarette smoking history.[2] ALJ Craft also found that the weight of the evidence did not support a finding of clinical pneumoconiosis. However, ALJ Craft found that Hill had legal pneumoconiosis, and noted that the medical opinions that attributed Hill's COPD to both his smoking history and coal dust exposure deserved probative weight.

On the question of legal pneumoconiosis, ALJ Craft noted that the Department of Labor found in the 2000 regulatory preamble that coal dust can cause obstructive lung disease. *See* 65 Fed. Reg. 79,938, 79,943 (Dec. 20, 2000). She further stated that the preamble noted that the risk of developing disabling COPD from exposure to coal-mine dust was additive to the risk of developing it from smoking, and that smoking-related and coal-dust-related obstruction develop through similar mechanisms. *See* 65 Fed. Reg. at 79,940, 79,943. She stressed, however, that the etiology of a miner's obstructive lung disease must be determined on a case-by-case basis, and that the miner bears the burden of proof. *See* 65 Fed. Reg. at 79,941.

Utilizing these principles, ALJ Craft assigned the "greatest probative weight" to the medical opinions of Dr. Houser and Dr. Rasmussen, who both found that a combination of smoking and exposure to coal dust were causes of Hill's COPD, which includes emphysema and chronic bronchitis. ALJ Craft found that Dr. Houser and Dr. Rasmussen "better explained how all of the evidence they developed and reviewed supported their conclusions." She also determined that the "reasoned" opinions of Dr. James and Dr. Simpao supported the opinions of Dr. Houser and Dr. Rasmussen.

---

[2] A "pack year" is one pack of cigarettes per day for one year. *See* Federal Respondent Brief at Pg. 8, n.6. "For example, people who smoked one pack a day for twenty years, two packs a day for ten years, and one-half pack a day for forty years can all be said to [have] smoking histories of twenty pack-years." *Id*.

With respect to the medical opinions of Dr. Culbertson, Dr. Selby, Dr. Hippensteel, and Dr. Tuteur, ALJ Craft credited them to the extent they concluded that Hill does not have clinical pneumoconiosis, but did not credit them on their conclusions that Hill did not have legal pneumoconiosis. ALJ Craft found that "[n]one offered any creditable explanation [of] how they were able to exclude[] coal dust as a contributing factor to [Hill's] obstructive disease." Most notably, ALJ Craft stated as follows:

> Their view that [Hill's] cigarette smoking was the sole cause of his emphysema . . . and [that Hill's] years of coal mine dust exposure played no role, *is contrary to the premises underlying the regulations that coal dust and smoking cause damage to the lungs by similar mechanisms and have additive effects*, and that coal dust exposure can cause clinically significant obstructive disease *even in the absence of clinical pneumoconiosis*. In light of the prevailing medical opinion accepted by the Department of Labor that coal dust and smoking have additive effects, a physician's opinion that focuses on the absence of clinical pneumoconiosis, and fails to explain why significant coal mine dust exposure was not a contributing or aggravating factor in a miner's obstructive disease, is entitled to less weight.

(emphasis added). ALJ Craft concluded that "the opinions of Drs. Culbertson, Selby, Hippensteel, and Tuteur are not well-reasoned," and gave them little weight. She also determined that Hill was "totally disabled by a pulmonary or respiratory impairment," and that Hill had established that "legal pneumoconiosis is a substantially contributing cause to his disability." ALJ Craft awarded benefits to Hill.

### 4.  The Benefits Review Board Affirmed ALJ Craft's Decision

On June 28, 2017, the Board affirmed ALJ Craft's decision in a 2-1 decision. The Board found, *inter alia*, that ALJ Craft "permissibly relied on the preamble as a guide in assessing the credibility of the medical evidence in this case," and "did not use the preamble as a legal rule or presumption that all obstructive lung disease is pneumoconiosis." One judge dissented, stating that ALJ Craft had not sufficiently explained why the opinions of Dr. Hippensteel and Dr. Tuteur

were inconsistent with the preamble, and would have remanded for reconsideration.

Island Creek petitioned this court for review on August 21, 2017.

## II.     DISCUSSION

### 1.  Standard of Review

In black-lung-benefits cases, this court reviews the Board's legal conclusions *de novo* and reviews the ALJ's decision to determine whether it was supported by substantial evidence. *See Cent. Ohio Coal*, 762 F.3d at 488. "The ALJ's findings are conclusive if they are supported by substantial evidence and accord with the applicable law." *Greene*, 575 F.3d at 633. "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985) (per curiam) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Where the substantial evidence requirement is satisfied, the court may not set aside the ALJ's findings, 'even if [the court] would have taken a different view of the evidence were we the trier of facts.'" *Cent. Ohio Coal*, 762 F.3d at 489 (alteration in original) (quoting *Greene*, 575 F.3d at 634).

"Finally, when dealing with a claim for benefits, we keep in mind that the Black Lung Benefits Act is remedial in nature and must be liberally construed to include the largest numbers of miners as benefit recipients." *Peabody Coal Co. v. Hill*, 123 F.3d 412, 415 (6th Cir. 1997) (quoting *Tussey v. Island Creek Coal Co.*, 982 F.2d 1036, 1042 (6th Cir. 1993), *abrogated on other grounds by Eastover Mining Co. v. Williams*, 338 F.3d 501 (6th Cir. 2003)) (internal quotation marks omitted).

### 2.  Analysis

Island Creek has not appealed ALJ Craft's finding that Hill is totally disabled, but instead has focused on ALJ Craft's conclusion that Hill has legal pneumoconiosis. Accordingly, the

dispositive issue in this appeal is whether Hill's COPD is legal pneumoconiosis – whether it was "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b); *see also* 20 C.F.R. § 718.201(a)(2). Substantial evidence supports ALJ Craft's conclusion that it is.

### a. ALJ Craft Properly Concluded That the Medical Opinions of Dr. Selby, Dr. Hippensteel, Dr. Tuteur, and Dr. Culbertson Are Contrary to the Concepts Underlying the Preamble

Island Creek first argues that ALJ Craft wrongly determined that the medical opinions of Dr. Selby,[3] Dr. Hippensteel, Dr. Tuteur, and Dr. Culbertson are contrary to the concepts underlying the preamble to the 2001 amendments to the Department of Labor's regulations related to black lung benefits. This argument misses the mark. As a preliminary matter, we summarized the preamble and its relevance to matters such as this in *Little David Coal Co. v. Dir., Office of Workers' Comp. Programs*, 532 F. App'x 633, 635-36 (6th Cir. 2012):

> The 2001 amendments to the [Department of Labor] regulations sought to resolve the scientific question of whether coal mine dust exposure can cause obstructive respiratory impairments. The affirmative answer to that question resulted in the [Department of Labor's] recognition of "legal pneumoconiosis," which, the preamble explains, "does not create a new medical diagnosis, but rather reflects the statute's definition of the disease as 'a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, *arising out of coal mine employment*.'" 65 Fed. Reg. 79923 (Dec. 2000) (emphasis added) (quoting 30 U.S.C. § 902(b)). In other words, the new distinction is a legal one, not a medical one. *Id.* at 79937. This, the preamble notes, is consistent with "the prevailing view of the medical community and the substantial weight of the medical and scientific literature . . . that exposure to coal mine dust may cause chronic obstructive pulmonary disease [COPD]. *Id.* at 79923.
>
> The preamble to the amendments presents a detailed account of the medical and scientific literature supporting the [Department of Labor's] conclusion that exposure to coal mine dust can cause such ailments. 65 Fed. Reg. 79937-45 (Dec. 20, 2000). The preamble explains the

---

[3] The Board affirmed ALJ Craft's evaluation of Dr. Selby's opinion as unchallenged on appeal. Island Creek raises no specific arguments with respect to Dr. Selby's opinion.

> guidance that the National Institute for Occupational Safety and Health ("NIOSH") provided [the Department of Labor] in addressing objections to the proposed amendments, including NIOSH's own "exhaustive review and analysis of the relevant scientific and medical evidence." *Id.* at 79938. As part of its review, NIOSH specifically evaluated "the role smoking plays in a coal miner's respiratory status." *Id.* The preamble also summarizes other medical literature addressing both coal dust exposure and smoking as they relate to pneumoconiosis. It concludes that exposure to coal dust is clearly associated with severe respiratory impairments even in the absence of smoking and that "[s]mokers who mine have additive risk for developing significant obstruction." *Id.* at 79940.

"When assessing a doctor's credibility, the ALJ may consult the preamble as a statement of medical principles accepted by the [Department of Labor]." *Lemarco, Inc. v. Helton*, 559 F. App'x 465, 468 (6th Cir. 2014) (citing *A & E Coal Co. v. Adams*, 694 F.3d 798, 801-02 (6th Cir. 2012)); *see also Little David Coal*, 532 F. App'x at 636 ("[I]t was permissible for the ALJ to turn to the preamble for guidance when determining the relative weight to assign two conflicting medical opinions."). Here, ALJ Craft accorded the greatest probative weight to the opinions of Dr. Rasmussen and Dr. Houser, who diagnosed Hill with legal pneumoconiosis.

In 2009, Dr. Rasmussen prepared a report based on Hill's medical records. Dr. Rasmussen diagnosed Hill with COPD in the form of emphysema, as a result of coal dust exposure and smoking. Dr. Rasmussen stated that coal dust is a "potent cause" of emphysema and that Hill's dust exposure was "sufficient to cause disabling lung disease in a susceptible individual" and "a significant contributor" to Hill's COPD. Dr. Rasmussen also acknowledged that it may be reasonable to assume that smoking was a greater factor in Hill's case.

Dr. Houser is a board-certified pulmonologist who examined Hill in 2009, and diagnosed COPD and emphysema, which he attributed to a combination of dust from fluorspar mining, dust from coal mining, and smoking. Dr. Houser took occupational, social, family and medical histories, and conducted a physical examination, chest x-ray, and pulmonary function testing. ALJ

Craft found his diagnosis well-supported by his examination and other testing, and gave his written opinion probative weight.

ALJ Craft's conclusion to assign probative weight to the opinions of Dr. Rasmussen and Dr. Houser was permissible because she determined that they reached their findings based on interpretations of the medical evidence they analyzed. ALJ Craft was persuaded by how both doctors explained their conclusion that Hill's COPD was due to smoking and coal dust exposure, which she found consistent with the premises underlying the regulations that dust-induced emphysema and smoke-induced emphysema occur through similar mechanisms, and that the effects of coal-mine dust exposure and cigarette smoking are additive.

ALJ Craft found the opinions of Drs. Rasmussen and Houser to be well-reasoned, well-documented, and consistent with the premises underlying the Department of Labor's regulations, in addition to being supported by the well-documented and well-reasoned opinions of Dr. James and Dr. Simpao. Dr. James, one of Hill's treating doctors, initially diagnosed Hill with legal pneumoconiosis caused by coal dust exposure in a 2004 report. Dr. James addressed the cause of Hill's COPD in a 2006 deposition, stating that smoking is more likely to cause obstructive defects, while dust exposure is more likely to cause restrictive defects. Dr. James acknowledged that Hill's exposure to coal-mine dust aggravated his COPD. With respect to Hill's smoking history, Dr. James conceded that it was "possible" Hill's respiratory impairment was caused entirely by smoking, but also denied that this was "likely." Dr. James eventually determined that both dust and smoking caused Hill's COPD.

In a 2008 report, Dr. James stated that smoking was responsible for twenty percent of Hill's "severe" lung condition, while coal dust was responsible for eighty percent. Lastly, Dr. James concluded in a 2015 report that Hill had COPD, which he determined was probably caused by a

combination of cigarette smoking and dust exposure. Relatedly, Dr. Simpao examined Hill on behalf of the Department of Labor in 2004 and subsequently provided a written opinion. Dr. Simpao concluded that Hill had legal pneumoconiosis, finding that Hill suffered from lung conditions attributable to coal dust exposure. Dr. Simpao could not determine the extent to which Hill's smoking "influenced" his pulmonary condition. Dr. Simpao was deposed in 2005 and 2006 and restated his conclusion that Hill's lung disease was the result of coal dust exposure, but Dr. Simpao also acknowledged that Hill's extensive history of cigarette smoking had an effect as well, though he could not determine the extent of the effect. The four opinions of Drs. Rasmussen, Houser, James, and Simpao served as the basis for ALJ Craft's conclusion regarding the cause of Hill's COPD.

At the same time, ALJ Craft discounted the opinions of Dr. Tuteur, Dr. Hippensteel, Dr. Selby, and Dr. Culbertson because she found that they failed to credibly explain how they eliminated years of coal dust exposure as an aggravating or contributing factor to Hill's COPD, in light of the premises underlying the regulations. Dr. Tuteur examined Hill and reviewed his medical records in 2015, and initially concluded that Hill had COPD in the form of emphysema and bronchitis caused by exposure to wood and coal smoke, asthma, and cigarette smoking. In the same report, he later concluded that Hill's COPD was "uniquely due to the chronic inhalation of tobacco smoke."

Dr. Hippensteel reviewed Hill's medical records in 2009, and concluded that Hill had bullous emphysema and chronic bronchitis due to smoking. Dr. Hippensteel found that Hill's pulmonary condition was not attributable to pneumoconiosis. In a 2009 deposition, Dr. Hippensteel reiterated that Hill's bullous emphysema was due to smoking because coal dust does not cause that form of emphysema. Dr. Hippensteel reaffirmed these conclusions in a

supplemental report that was also issued in 2009. Dr. Hippensteel was deposed again in 2015, and in this instance, he diagnosed Hill with bronchiectasis and bullous emphysema, which he attributed to smoking. Dr. Hippensteel stated that "it would be a very unusual combination to see in a person that just had coal workers' pneumoconiosis."

Dr. Selby examined Hill in 2004, and concluded that Hill had severe bullous emphysema caused by cigarette smoking. In a 2007 deposition, Dr. Selby testified that Hill's condition was caused by smoking and asthma, and opined that none of Hill's conditions was related to his history of coal dust exposure. Dr. Selby later reaffirmed his conclusions in a 2008 report. Lastly, Dr. Culbertson, who is Hill's treating pulmonologist, relayed during a 2015 deposition that he diagnosed Hill with COPD and attributed Hill's condition solely to smoking. Dr. Culbertson further stated that coal mine dust exposure was not a cause of Hill's COPD.

Although Island Creek argues that ALJ Craft's decision erred in assigning less weight to these four opinions, this argument fails. "When the question is whether the ALJ reached the correct result after weighing conflicting medical evidence, our scope of review . . . is exceedingly narrow." *Consolidation Coal Co. v. Worrell*, 27 F.3d 227, 230 (6th Cir. 1994) (internal quotation marks and citation omitted).

The matter currently before us is similar to *Little David Coal*, where this court affirmed an award of benefits to a coal miner with an extensive smoking history and seven years of coal mine employment. 532 F. App'x at 634. There, the ALJ similarly used the preamble to aid his decision in assigning weight to conflicting medical evidence. *Id.* at 636. This court noted as follows:

> It was the ALJ's duty to consider the conflicting evidence and assign it weight as he saw fit based on the record as a whole. That record included the DOL regulations, which, in turn, include the preamble. Thus, it was permissible for the ALJ to turn to the preamble for guidance when determining the relative weight to assign two conflicting medical opinions . . . . The preamble is an instructive resource that explains the [Department

11

of Labor's] evaluation of conflicting medical and scientific literature on the same complex issues with which the ALJ in this case was confronted. In the face of conflicting opinions from two credible sources, it was reasonable for the ALJ to give greater weight to the testimony of the medical expert whose opinion was supported by the prevailing view of the medical and scientific community as reflected in the regulatory preamble.

*Id.* The reasoning delineated in *Little David Coal* squarely applies to ALJ Craft's analysis and bolsters her decision to assign less weight to the opinions of Drs. Tuteur, Hippensteel, Selby, and Culbertson.

Moreover, further support for ALJ Craft's decision can be found in *Lemarco*, where this court affirmed an award of survivor benefits to the wife of a miner with thirteen years of coal mine employment. 559 F. App'x at 466. This court found that the "ALJ acted reasonably within its discretion" when it determined that the medical opinions of the coal company's doctors "deserved less weight given the clash between aspects of their opinions and [Department of Labor] standards." *Id.* at 468. This court importantly noted, with respect to the ALJ's decision to give less weight to a specific doctor's opinion, that the doctor "attributed [the miner's] COPD entirely to cigarette smoking but 'offered no explanation' for excluding coal dust as at least a 'contributing factor,' thus failing to address [the Department of Labor's] position that coal dust and smoking may combine to cause pneumoconiosis." *Id.* (citing 65 Fed. Reg. at 79,940).

ALJ Craft did not shift the burden to Island Creek to prove that Hill's COPD was not caused by coal dust exposure, nor did she treat the preamble as a presumption or a rule of law, as Island Creek argues on appeal. Instead, ALJ Craft specifically noted that the issue of whether a particular miner's impairment arose from coal mine employment "must be resolved on a claim-by-claim basis," and that "[t]he burden of proof remains on the miner to show that his obstructive lung disease arose out of his coal mine employment." ALJ Craft consulted the preamble and gave greater weight to the medical opinions of the four physicians (Drs. Rasmussen, Houser, Simpao,

and James) who determined that both cigarette smoking and a fourteen-year coal mining career contributed to Hill's COPD. ALJ Craft found these opinions better reasoned than the opinions of Drs. Tuteur, Hippensteel, Selby, and Culbertson—opinions that failed to credibly explain the exclusion of coal dust as a causative factor in light of the preamble, which states that smoking and coal dust have additive effects. In other words, if a medical opinion wholly discounts coal dust exposure as a cause of COPD and solely attributes the disease to smoking tobacco *without adequately explaining why* coal dust is not a cause, where a history of coal dust exposure is present, that does not mean that the opinion is per se invalid; it simply means that an ALJ is entitled to give such an opinion less weight, within the context of a preamble that states coal dust and smoking have additive effects.

It was proper for ALJ Craft to consult the preamble to aid her decision in weighing conflicting medical evidence. *See Arch on the Green, Inc. v. Groves*, 761 F.3d 594, 601 (6th Cir. 2014) ("The ALJ did not err when he referred to the preamble to the regulations. This court has heard and rejected these kinds of arguments before."); *see also Energy W. Mining Co. v. Estate of Blackburn*, 857 F.3d 817, 828-29 (10th Cir. 2017) (affirming ALJ's rejection of an opinion that "fail[ed] to consider the additive risk created by exposure to [both] coal-mine dust and smoking"). Accordingly, it was not error for ALJ Craft to consult the preamble in discounting the medical opinions of Drs. Tuteur, Hippensteel, Selby, and Culbertson.

### b. ALJ Craft Properly Evaluated the Opinions of Dr. Hippensteel and Dr. Tuteur

To the extent that Island Creek argues ALJ Craft inappropriately discounted the opinions of Dr. Hippensteel and Dr. Tuteur, this argument also misses the mark. "We do not reweigh the evidence or substitute our judgment for that of the ALJ and we will not reverse the ALJ's decision merely because we would have taken a different view of the evidence were we the trier of facts."

*Zurich Am. Ins. Grp v. Duncan*, 889 F.3d 293, 299 (6th Cir. 2018) (internal quotation marks and citations omitted). In any event, ALJ Craft thoroughly explained her reliance, or lack thereof, on these medical opinions. First, ALJ Craft concluded that Hill did not have clinical pneumoconiosis and specifically credited Dr. Tuteur and Dr. Hippensteel for this conclusion. But as previously mentioned, ALJ Craft discounted these opinions on the issue of legal pneumoconiosis because they did not credibly explain how they excluded coal dust as a causative factor. It was within ALJ Craft's discretion to make such a decision.

### c. ALJ Craft Properly Gave More Weight to the Opinions of Dr. Rasmussen and Dr. Houser to Conclude That Hill Had Legal Pneumoconiosis

Island Creek also argues that ALJ Craft's reliance on the reports of Dr. Houser and Dr. Rasmussen was irrational and contrary to law. Specifically, Island Creek contends that the opinions of these doctors were out of date, did not consider the most recent medical evidence, and failed to explain how Hill's coal dust exposure was related to his COPD. Island Creek also asserts that Dr. Houser and Dr. Rasmussen took logical leaps to render their conclusions. These arguments fail because ALJ Craft's decision to accord these opinions probative weight is supported by substantial evidence.

"[T]he ALJ as factfinder should decide whether a physician's report is sufficiently reasoned, because such a determination is essentially a credibility matter." *Wolf Creek Collieries v. Dir., Office of Workers' Comp. Programs*, 298 F.3d 511, 522 (6th Cir. 2002) (citation and internal quotation marks omitted); *see also Tenn. Consol. Coal Co. v. Crisp*, 866 F.2d 179, 185 (6th Cir. 1989) (explaining that determinations to credit or discredit medical opinions based on whether they are sufficiently documented and reasoned is a credibility matter that must be left to the ALJ). Here, Dr. Rasmussen noted that Hill "had a long history of respiratory complaints" while simultaneously acknowledging Hill's "40-60 pack years of cigarette smoking."

Dr. Rasmussen analyzed and reviewed diagnostic testing available to him at the time of his report, and concluded that "there appears no basis for the conclusion that coal mine dust had no role in causing impairment." While stating that it would be reasonable to assume in Hill's case that cigarette smoking was a greater contributing factor than his coal mine dust exposure, Dr. Rasmussen also noted that "fourteen years of coal mine employment underground, mostly at the face, is sufficient to cause disabling lung disease in a susceptible individual." Dr. Rasmussen further concluded "to a reasonable degree of medical certainty" that Hill suffered a disabling chronic lung disease as a consequence of "both his significant cigarette smoking and his coal mine dust exposure," and that "his coal mine dust exposure is a significant co-contributor."

With respect to the opinion of Dr. Houser, ALJ Craft noted that Dr. Houser is a board-certified pulmonologist who took relevant histories, conducted a physical examination, and performed objective tests. Dr. Houser diagnosed COPD and emphysema due to smoking and inhalation of coal and fluorspar mine dust, and ALJ Craft found his opinion consistent with the evidence available to him. "In deciding whether the substantial evidence standard is satisfied, we consider whether the ALJ adequately explained the reasons for crediting certain testimony and documentary evidence over other testimony and documentary evidence." *Greene*, 575 F.3d at 634. ALJ Craft did so here, as reflected in her written decision. Accordingly, ALJ Craft's decision to give probative weight to the medical opinions of Dr. Rasmussen and Dr. Houser was supported by substantial evidence.

#### d. ALJ Craft Properly Weighed the Opinions of Treating Physicians

Lastly, Island Creek contends that ALJ Craft erred in crediting one treating physician (Dr. James) while simultaneously discrediting the other (Dr. Culbertson). ALJ Craft found Dr. James's opinion consistent with the regulations and the evidence available to him. At the same

15

time, ALJ Craft gave Dr. Culbertson's opinion less weight because he did not explain why he excluded exposure to coal dust as a cause of Hill's COPD. Island Creek argues that substantial evidence does not support ALJ Craft's decision in this regard, and highlights Dr. Culbertson's credentials and experience with Hill as reasons why ALJ Craft should have given more weight to Dr. Culbertson's opinion. However, ALJ Craft acknowledged in her opinion that Dr. James had "lesser qualifications but nonetheless provided [a] documented and reasoned opinion[]." Moreover, Island Creek asks this court to address Dr. James' credibility in order to find that there is insufficient evidentiary support for Dr. James' opinion, but this "would exceed our limited scope of review . . . ." *Wolf Creek*, 298 F.3d at 522. Consequently, there was no error in ALJ Craft's decision to discount the opinion of treating physician Dr. Culbertson.

### III.    CONCLUSION

For the foregoing reasons, Island Creek's Petition for Review is **DENIED**.